UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON BRISMAN,

                                    Plaintiff,
                                                        9:15-cv-00466
v.                                                      (MAD/TWD)

HAROLD D. GRAHAM, et al.,

                                    Defendants.
_____

APPEARANCES:                                OF COUNSEL:

JASON BRISMAN
95-A-6077
Plaintiff *pro se*
Clinton Correctional Facility - Annex
P.O. Box 2002
Dannemora, NY 12929

HON. ERIC T. SCHNEIDERMAN              CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT - RECOMMENDATION AND ORDER</u>

This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino,

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Plaintiff

Jason Brisman alleges Defendants Sgt. Volpe, C.O. Travis, C.O. Reilly, C.O. Shells, C.O. Lupo,

and C.O. Kirkwood used excessive force and retaliated against him for engaging in protected

conduct in violation of his rights under the First and Eighth Amendments.  (Dkt. No. 1.)

Currently pending before the Court is Plaintiff's motion for the appointment of counsel (Dkt. No. 18) and Defendants' motion to dismiss Plaintiff's excessive force claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 21.[1]) Plaintiff has opposed Defendants' partial motion to dismiss. (Dkt. No. 31.) For the reasons that follow, the Court denies Plaintiff's motion for the appointment of counsel without prejudice and recommends granting Defendant's partial motion to dismiss.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed his complaint on April 17, 2015, naming twenty-seven New York State Department of Corrections and Community Supervision ("DOCCS") employees as defendants. (Dkt. No. 1 at ¶¶ 4-31.) On July 2, 2015, Plaintiff's *in forma pauperis* application was granted. (Dkt. No. 9.) Upon initial review, only Plaintiff's Eighth Amendment excessive force and First Amendment retaliation claims against Defendants Volpe, Travis, Reilly, Shells, Kirkwood, and Lupo survived and required a response. (*See generally* Dkt. No. 9.) All other claims and defendants were dismissed. *Id*. at 18-20.

At all times relevant to this action, Plaintiff was an inmate at Auburn Correctional Facility ("Auburn"). *Id*. at ¶ 3. Plaintiff's alleges he was assaulted and subjected to excessive force on June 6, 2014, and September 12, 2014. (Dkt. No. 1 at ¶¶ 35-35, 47.) In his opposition to Defendants' partial motion to dismiss, Plaintiff also alleges he was assaulted on August 9, 2014, and August 19, 2014. (Dkt. No. 31 at ¶¶ 9-14.) Plaintiff alleges "pain, suffering, physical

---

[1] Defendants have not moved to dismiss Plaintiff's retaliation claims. (*See* Dkt. No. 21.) Also included in Plaintiff's Exhibit E is a grievance referencing a September 14, 2014, assault by C.O. Travis. (Dkt. No. 1-1 at 43.) Plaintiff has not asserted a claim in his complaint with respect to this claimed assault. Therefore, it is not addressed herein.

injury, and emotional distress" as a result of each incident of excessive force. (Dkt. No. 1 at ¶¶ 55-56.)

## II.    LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint "for failure to state a claim upon which relief can be granted" under Rule 12(b)(6). In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Satisfaction of the requirement that a plaintiff "show" that he or she is entitled to relief requires that the complaint "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While Rule 8(a)(2) "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks

omitted).  A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice.  *Id.* (citation omitted)

Where a party is proceeding *pro se*, the court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (courts remain obligated to construe *pro se* complaints liberally even after *Twombly*).  "The mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual allegations are consistent with the allegations of the Plaintiff's complaint."  *Robles v. Bleau*, No. 07-CV-0464, 2008 WL 4693153, at *6 & n.41 (N.D.N.Y. Oct. 22, 2008)[1] (collecting cases); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (where a *pro se* is faced with a motion to dismiss, a court may consider materials outside of the complaint "to the extent they are consistent with the allegations in the complaint"), *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see also Gil v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (in reviewing district court's dismissal of *pro se* plaintiff's claim, Second Circuit considered plaintiff's affidavit submitted in opposition to motion to dismiss).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not

---

[1]  The Court will provide Plaintiff with copies of all unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

required where "the problem with [the plaintiff's] causes of action is substantive" such that

"better pleading will not cure it." *Id*. (citation omitted).

## III.    ANALYSIS

### A.    Legal Standard for Excessive Force Claims

Excessive force claims fall under the Eighth Amendment right against cruel and unusual

punishment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986), *abrogated on other grounds by*

*Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam).  The Eighth Amendment proscribes

punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible

with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v.*

*Gamble*, 429 U.S. 97, 102, 104 (1976).  When prison officials are "accused of using excessive

physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial

inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or

maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)

(quoting *Whitley*, 475 U.S. at 320-21).  "In determining whether the use of force was wanton and

unnecessary," the court should evaluate "the need for application of force, the relationship

between that need and the amount of force used, the threat reasonably perceived by responsible

officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S.

1 at 7 (citation and quotation marks omitted).  Significantly, not:

> every malevolent touch by a prison guard gives rise to a federal
> cause of action.  The Eighth Amendment's prohibition of cruel and
> usual punishments necessarily excludes from constitutional
> recognition *de minimis* uses of physical force, provided that the use
> of force is not of a sort repugnant to the conscience of mankind.

*Id.* at 9 (citations and internal quotation marks omitted).

Analysis of claims of cruel and unusual punishment, including excessive force claims, requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his conduct. *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson*, 503 U.S. at 7-8). The Supreme Court emphasized that after *Hudson*, the core judicial inquiry is focused on whether the nature of the force applied was nontrivial rather than the extent of the injury sustained. *Wilkins*, 559 U.S. 34 at 39.

Even where courts have recognized claims that are "extremely modest, with little elaboration regarding the circumstances" as stating a claim for Eighth Amendment excessive force, they have still required at least some level of detail in a plaintiff's pleadings. *De Ponceau v. Bruner*, 9:09-CV-00605 (GTS/DEP), 2012 WL 1030415, at *6 (N.D.N.Y. Feb. 21, 2012). For example, in *De Ponceau*, the court denied the defendant's motion to dismiss the plaintiff's Eighth Amendment excessive force claims where the plaintiff alleged that the defendants "choked him, kicked his back, and pushed his face into a door as part of a racially motivated assault." *Id.* However, courts will grant motions to dismiss where "there [were] no factual details to aid in the evaluation of whether the force was needed, how much force was needed in relation to how much force was used, whether there existed a reasonable perception of a threat, and what efforts, if any, were taken to temper the severity of the force." *LaRocco v. N.Y.C. Dept. of Corrections*, No. 99CIV.9759SHSRLE, 2001 WL 1029044, at *6 (S.D.N.Y. Aug. 31, 2001) (granting defendant's motion to dismiss where defendant corrections officer allegedly threw plaintiff against a wall and plaintiff alleged no injury as a result); *see also Reid v. Coughlin*, No. 86 CIV. 1351 (LAP), 1994 WL 23152, at *4 (S.D.N.Y. Jan. 26, 1994).

## B.    June 6, 2014, Assault

Plaintiff alleges he was assaulted on June 6, 2014, August 9, 2014, August 19, 2014, and September 12, 2014.  Plaintiff's first cause of action alleges that on June 6, 2014, he was assaulted by C.O. Reilly, C.O. Kirkwood, and "others".  (Dkt. No. 31 at ¶ 6.)  On June 4, 2014, Plaintiff filed a grievance against gymnasium employees and staff at Auburn.  (Dkt. No. 31 at ¶ 5.)  Two days later, Defendants Reilly, Kirkwood, and others assaulted Plaintiff for filing the June 4, 2014, grievance.  (Dkt. No. 1 at ¶ 47).  At approximately 1:20 p.m. on June 6, 2014, Defendant Kirkwood took Plaintiff's identification card while Plaintiff waited to enter the gymnasium near the C-block entrance.  (Dkt. No. 31 at ¶¶ 6-7.)  After asking to speak with Defendant Reilly, Plaintiff was "beat up" by Defendants Kirkwood, Reilly, and other "John Doe" officers.  *Id.*  On June 7, 2014, Plaintiff filed a grievance stating that the day before he was "almost assaulted" and "almost jumped by several officers" including Defendants Reilly and Kirkwood, in retaliation for filing the June 4, 2014, grievance.[2] (Dkt. No. 21-3 at 3.)

Although Plaintiff includes a specific time, place, and motive of the June 6, 2014, assault, he fails to allege the type or degree of force used or identify the officers who allegedly used force.  (*See*, Dkt. Nos. 1 & 31.)  He states only that at about 1:20 p.m. he was "beat up" near the gym door after asking to speak to a supervisor and that Defendant's motivation for the alleged attack was Plaintiff's filing a previous grievance.  (Dkt. No. 1 at 47; Dkt. No. 31 at ¶ 6.)  No specifics are provided as to which officer or combination of officers used force or the nature of injuries allegedly sustained.  (*See generally* Dkt. Nos. 1 & 31.)  Plaintiff's grievance also makes no mention of any specific excessive force that was used against him.  (Dkt. No. 21-3 at 3.)

---

[2]  Although the June 4, 2014, grievance stating Plaintiff was "almost assaulted" is contradictory to the allegations made in his complaint, which say he was assaulted, the Court reads the complaint to state the strongest claim possible in deference to his *pro se* status.

## C.     August 9, 2014, and August 19, 2014, Assaults

Plaintiff's claims against Defendant Travis arising out of the August 9, 2014, and August 19, 2014, incidents are not sufficiently wanton to rise to the level of an Eighth Amendment violation. First, on August 9, 2014, Plaintiff went to the package room to retrieve a package his father had sent him. (Dkt. No. 31 at ¶ 9.) Defendant Travis, the C.O. on staff, denied Plaintiff several markers that came with the package. *Id*. When Plaintiff stepped aside to review the package room directive posted on a bulletin board, Defendant Travis took Plaintiff's identification card and "flung it hitting [him] in the face, causing [him] injury and pain." *Id*. at ¶¶ 10-11. He asked to speak with an area supervisor after this incident but was denied. *Id*.

A similar incident occurred on August 19, 2014. Plaintiff went to retrieve a package from a family member and was denied the entire package. *Id*. at ¶¶ 13-14. Defendant Travis told him that he was a "Christian" and "did not like the religious beads." *Id*. at ¶ 14. When Plaintiff asked to see the beads, Defendant Travis again hit him in the face with his identification card while shouting "you already have a pair [of Santeria elekes] on you idiot!" *Id*. at ¶ 15. On August 20, 2014, Plaintiff filed a grievance claiming he was assaulted and denied the right to practice his religion on August 9, and August 19, 2014. *Id*. at ¶ 16. He also requested a sick call to see a doctor for injuries he sustained from Defendant Travis' actions. *Id*. at ¶ 17.[3]

Similarly to *LaRocco*, Plaintiff alleges few facts that would give insight into Defendant Travis's state of mind at the time of the alleged incident. He does allege that his package was denied because Defendant Travis told him he was "a Christian and did not like the religious

---

[3] Plaintiff's August 20, 2014, grievance and sick call request were not attached as exhibits to his pleadings.

beads." (Dkt. No. 31 at ¶ 14.)  However, it is unclear at best that Defendant Travis' statement was a motivation for the subsequent alleged assault on Plaintiff.

Even if Defendant Travis acted maliciously, his actions on August 9, 2014, and August 19, 2014, were not so malevolent as to give rise to a Constitutional violation.  Even though injury is only one factor to be considered, the injury alleged must be more than *de minimis*.  *Hudson*, 503 U.S. 1 at 9 (citation and quotation marks omitted).  Plaintiff failed to demonstrate that he sustained more than a *de minimis* injury, stating only that he sustained injury and pain for which he requested a sick call.  (Dkt. No. 31 at ¶ 17.)

### D.    September 12, 2014, Assault

With regard to the September 12, 2014, incident, Plaintiff's complaint and his opposition to the present motion include even fewer facts than are present in his three prior excessive force claims.  (Dkt. No. 1 at ¶¶ 33-38 and Dkt. No. 31 at ¶¶ 19-24.)  On September 12, 2014, Plaintiff was called to the package room and told that Defendant Volpe wanted to meet with him, but Volpe never arrived.  (Dkt. No. 1 at ¶ 33.)  Plaintiff alleges that later that day, he was again called to the package room where Defendants Volpe, Travis, Lupo, Shells, and John Doe assaulted him.  *Id.* at ¶ 34.  Plaintiff claims he was also threatened for filing previous grievances and told that if he filed another grievance he would be "beat up."  *Id.* at ¶ 35.  Defendant Travis then directed Plaintiff to sign a "1755 form[4]" and told Plaintiff that he would be "beat up" if he did not sign the form.  *Id.* at ¶ 36.  Plaintiff signed the form.  *Id.* at ¶ 38.  Defendant Travis then put Plaintiff's package on a shelf and stated that if Plaintiff did not sign off on his grievance, the package would be thrown away and he would not receive any more packages while at Auburn.

---

[4] Form 1755 is a form that an inmate must sign and provides a list of items received by an inmate at a DOCCS facility.  State of New York - Department of Corrections, Non-Food Package Record, http://www.doccs.ny.gov/Directives/Frm1755.pdf (last visited July 15, 2016).

*Id.* In his opposition, Plaintiff repeats the allegations of threatened beatings and also states Defendants "assaulted me in the package room area causing me injury and pain." (Dkt. No. 31 at ¶ 20.)

Plaintiff's grievance dated September 12, 2014, makes no mention of the September 12, 2014, assault. (Dkt. No. 1-1 at 3.) Plaintiff filed another grievance on September 17, 2014. *Id.* at 2. He stated that the second time he was called to the package room on September 12, 2014, a sergeant and four other corrections officers threatened to beat him up for filing previous grievances. *Id.* The Central Office Review Committee's ("CORC") decision on Plaintiff's September 17, 2014, grievance noted that "Sergeant V . . . and Officer T . . . deny threatening the grievant on 9/12/14." *Id.* at 7. Plaintiff filed another grievance referencing the September 12, 2014, incident on September 20, 2014. *Id.* at ¶ 10. In that grievance, he stated again that on September 12, 2014, he was threatened by the Sergeant conducting the investigation into Plaintiff's grievance against Defendant Travis. *Id.* After coming back from the package room where he was threatened, he gave an officer his identification pass and the officer told him "bad move" purportedly referring to the previous grievances Plaintiff had filed. *Id.*

Plaintiff's September 17, 2014, and September 20, 2014, grievances also include only allegations of threats by defendants and not actual acts of physical violence. (Dkt. No. 1-1 at 2 and 10.) Plaintiff gives no description of the alleged assault. Even with the most liberal reading of his pleading, Plaintiff fails to allege or demonstrate that any force was in fact used against him on September 12, 2014. (*See Generally* Dkt. Nos. 1 & 31.) Instead, Plaintiff's allegations are the type of bare "the-defendant-harmed-me-accusation[s]" that *Iqbal* prohibits. *Iqbal*, 556 U.S. at 678. Thus, it is impossible for the Court to assess the defendant's state of mind and a search

of the record reveals no evidence of wanton or sadistic conduct or greater than *de minimis* injuries that would rise to the level of an Eighth Amendment violation.

While Plaintiff includes specific and numerous details pertaining to other incidents described in his complaint, he has not stated facts sufficient to sustain the present excessive force claims. However, because it is plausible that he could allege further facts that would be sufficient, the Court recommends that Plaintiff's claim be dismissed without prejudice and with leave to amend.

## IV. MOTION FOR THE APPOINTMENT OF COUNSEL

Plaintiff has moved for the appointment of counsel pursuant to 28 U.S.C. § 1915. (Dkt. No. 18.) Even though Plaintiff has shown he has been unable to obtain counsel through the private sector or public interest firms (Dkt. No. 18-3 at 2-11), a more fully developed record would be necessary before an assessment can be made as to whether counsel should be appointed. *See Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997).

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Id.* at 393. Instead, the court must consider a number of factors. *Hodge v. Police Officers*, 802 F.2d 58, 60-61 (2d Cir. 1986). As a threshold matter, "in deciding whether to appoint counsel . . . the [court] should first determine whether the indigent's position seems likely to be of substance." *Id.* at 61. Once this threshold is met, the court is required to consider other criteria "such as the factual and legal complexity of the case, the ability of the litigant to navigate the legal minefield unassisted, and any other reason why in the particular case appointment of counsel would probably lead to a more just resolution of the dispute." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001); *see also Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). However, no one

factor is controlling, and "each case must be decided on its own facts." *Yelasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citation omitted).

Despite Plaintiff's position to the contrary, the issues in this case are not overly complex. (*See* Dkt. No. 18-1 at ¶ 3.) Further, it appears to the Court as though Plaintiff, to date, has effectively litigated this action. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial of this matter, as is the case in many actions brought by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Yelasquez*, 899 F. Supp. at 974. Moreover, the Court will likely appoint trial counsel at the final pretrial conference if this case survives any dispositive motions Defendants may file. Finally, the Court is unaware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

Accordingly, Plaintiff's motion for the appointment of counsel (Dkt. No. 18) is denied without prejudice at this time.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants' partial motion to dismiss for failure to state a claim (Dkt. No. 21) be **GRANTED** and Plaintiff's Eighth Amendment excessive force claims relating to the June 6, 2014, August 9, 2014, August 19, 2014, and September 12, 2014, assaults be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**, and it is further

**ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 18) is **DENIED WITHOUT PREJUDICE**, and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Report-Recommendation and Order, along with copies of the unpublished decision cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: July 18, 2016
Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

2008 WL 4693153
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Raymond ROBLES, Plaintiff,
v.
K. BLEAU, Correctional Officer, Riverview C.F.;
Peacock, Correctional Sergeant, Riverview C.F.;
R. Varkiar, Senior Counsel, Riverview C.F.; and
New York State Dep't of Corr. Servs., Defendants.

No. 9:07-CV-0464.
|
Oct. 22, 2008.

**Attorneys and Law Firms**

Raymond Robles, Cape Vincent, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, David L. Cochran, Esq., of Counsel, New
York, NY, for Defendants.

### DECISION & ORDER

THOMAS J. McAVOY, Senior District Judge.

 **\*1** This *pro se* civil rights action, brought pursuant to
42 U.S.C. § 1983, was referred to the Hon. George H.
Lowe, United States Magistrate Judge, for a Report-
Recommendation pursuant to 28 U.S.C. § 636(b) and
Local Rule 72.3(c).

The Report-Recommendation dated September 12, 2008
recommended that Defendants motion to dismiss be
granted in part and denied in part. Specifically,
Judge Lowe recommended that Plaintiff's Fourteenth
Amendment procedural due process claim against
Defendant Varkiar regarding his disciplinary hearing
be dismissed if, within thirty (30) days from the
filing of this Final Order, Plaintiff does not file
an Amended Complaint that successfully states a
Fourteenth Amendment procedural due process claim.
It was recommended that Plaintiff's remaining claims be
dismissed with prejudice.

Plaintiff filed objections to the Report-Recommendation,
essentially raising the same arguments presented to the
Magistrate Judge.

When objections to a magistrate judge's Report-
Recommendation are lodged, the Court makes a *"de
novo* determination of those portions of the report or
specified proposed findings or recommendations to which
objection is made." *See* 28 U.S.C. § 636(b)(1). After such a
review, the Court may "accept, reject, or modify, in whole
or in part, the findings or recommendations made by
the magistrate judge. The judge may also receive further
evidence or recommit the matter to the magistrate judge
with instructions." *Id.*

Having reviewed the record *de novo* and having considered
the issues raised in the Plaintiff's objections, this Court
has determined to accept and adopt the recommendation
of Magistrate Judge Lowe for the reasons stated in the
Report-Recommendation.

It is therefore

**ORDERED** that Defendants motion to dismiss be
**GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED.**

### *REPORT-RECOMMENDATION*

GEORGE H. LOWE, United States Magistrate Judge.

This *pro se* prisoner civil rights action, commenced
pursuant to 42 U.S.C. § 1983, has been referred to me
by the Honorable Thomas J. McAvoy, Senior United
States District Judge, for Report and Recommendation
with regard to any dispositive motions filed, pursuant to
28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally,
in his Complaint, Raymond Robles ("Plaintiff") alleges
that three employees of the New York State Department
of Correctional Services ("DOCS"), as well as DOCS
itself, violated his rights under the Eighth and Fourteenth
Amendments when they (1) required him to submit to
a random urinalysis test when they knew he was taking
a medication that would prevent him from providing a
urine sample, and (2) charged, convicted, and punished
him with eighty-seven days in a Special Housing Unit for
refusing to provide a urine sample. (*See generally* Dkt. No.
1 [Plf.'s Compl.].) Currently pending before the Court is

Defendants' motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). (Dkt. No. 16.) For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

 **\*2** As Defendants correctly observe in their Memorandum of Law, Plaintiff's Complaint-which describes the events giving rise to his claims in two brief paragraphs without identifying any role played by Defendants in those events-is hardly a model of *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.].) However, as explained below in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[1] Here, I find that the factual allegations contained in Plaintiff's Response Affidavit are consistent with the factual allegations of his Complaint. As a result, in construing Plaintiff's Complaint, I will consider his Response Affidavit as effectively amending the factual allegations of his Complaint. Thus construed, Plaintiff's Complaint alleges as follows:

1. On November 6, 2006, at about 7:28 a.m., Plaintiff was directed to report to the drug testing center at Riverview C.F.;[2]

2. Upon arriving at the drug testing center, Plaintiff was informed by Correctional Officer K. Bleau ("Defendant Bleau") that he had been randomly selected to submit to urinalysis drug testing;[3]

3. Defendant Bleau asked Plaintiff if he would provide a urine sample, and Plaintiff responded yes;[4]

4. Defendant Bleau then asked Plaintiff if he was taking any medications, and Plaintiff explained that (1) yes, he was taking Flomax and Omeprazole due to a prostate condition and a stomach problem, and (2) "d[ue] to the medication [s]" and the fact that he had used the bathroom

at approximately 7:10 a.m. that morning, he would need more water in order to urinate;[5]

5. As Plaintiff was explaining these facts to Defendant Bleau, Defendant Bleau became upset and walked away from Plaintiff;[6]

6. When he returned, Defendant Bleau then informed Plaintiff that, pursuant to DOCS Directive 4937, Plaintiff had three hours provide a urine sample or he would be considered to be refusing to provide the urine sample;[7]

7. Defendant Bleau then gave Plaintiff a cup of water at approximately 7:30 a.m., and a second cup of water at approximately 9:30 a.m., but did not give him a third cup of water at approximately 8:30 a.m., as required by Part D.4. of DOCS Directive 4937;[8]

8. At approximately 10:30 a.m., Plaintiff was still unable to provide a urine sample;[9]

9. At that time, Defendant Bleau notified Correctional Sergeant Peacock ("Defendant Peacock") that Plaintiff was refusing a direct order to provide a urine sample;[10]

10. When Plaintiff tried to explain to Defendant Peacock that his medical condition prevented him from providing the urine sample, Defendant Peacock responded, "Shut up and put [your] hands behind [your] back";[11]

 **\*3** 11. Both Defendants Bleau and Peacock failed to investigate or inquire as to why Plaintiff had been prescribed Flomax and Omeprazole, or what the potential side effects of those drugs were, although that information was readily obtainable from medical staff at Riverview C.F.;[12]

12. Instead, Defendants Bleau and/or Peacock escorted Plaintiff to the Riverview C.F. Special Housing Unit ("S.H.U.");[13]

13. On November 7, 2006, at about 8:55 a.m., while Plaintiff was in S.H.U., he was served with a copy of a misbehavior report authored by Defendant Bleau, charging him with (1) failing to comply with the urinalysis testing procedure, and (2) refusing a direct order to provide a urine sample;[14]

14. On November 10, 2006, Senior Correctional Counselor R. Varkiar conducted Plaintiff's disciplinary hearing on the misbehavior report; [15]

15. At the hearing, when Plaintiff entered a plea of "Not guilty, with an explanation," Defendant Varkiar gave Plaintiff "an opportunity to explain [him] self"; [16]

16. Plaintiff explained that he had a medical condition that prevented him from providing a urine sample, that he had attempted to inform Defendant Bleau of this medical condition (but Defendant Bleau walked away from Plaintiff), and that he had attempted to inform Defendant Peacock of this medical condition (but Defendant Peacock told Plaintiff to "[s]hut up"); [17]

17. Defendant Varkiar then made a telephone call; when he was done with the call, he told Plaintiff that (1) he had called the medical unit at Riverview C.F. to ask whether or not the medication that Plaintiff was taking would prevent him from urinating, and (2) someone in the medical unit had responded that no, the medication should not prevent Plaintiff from urinating; [18]

18. Plaintiff then attempted to explain to Defendant Varkiar *why* he was taking one of the medications, specifically, to remedy a prostate problem that itself interfered with his ability to urinate; [19]

19. However, Defendant Varkiar failed to call back the person in the medical unit at Riverview C.F. and request that he or she again answer the question he had posed before, taking into account Plaintiff's prostate condition as shown by his medical records; [20]

20. As a result, Defendant Varkiar found Plaintiff guilty of both disciplinary charges, and sentenced him to ninety (90) days in S.H.U ., with a corresponding loss of privileges; [21]

21. At the conclusion of the hearing, Plaintiff received a written copy of the hearing disposition, which stated that the evidence relied on included (1) the statements in the written misbehavior report of Defendant Bleau (which Defendant Varkiar stated were credible), and (2) Plaintiff's

own hearing testimony (which Defendant Varkiar stated was not credible); [22]

22. On November 27, 2006, Plaintiff appealed his conviction to DOCS Director of Special Housing, Donald Selsky, who reversed the conviction on January 19, 2007; [23] and

**\*4** 23. On February 1, 2007, Plaintiff was finally released from S.H.U., after spending eighty-seven (87) days there. [24]

It should be noted that, in addition to asserting constitutional claims against Defendants Bleau, Peacock, and Varkiar in their individual or personal capacities, Plaintiff's Complaint asserts a constitutional claim also against DOCS itself. It should also be noted that, as relief for Defendants' actions, Plaintiff requests money damages but no injunctive relief. [25]

**B. Summary of Grounds in Support of Defendants' Motion**

Generally, Defendants' motion to dismiss for failure to state a claim is premised on two grounds: (1) Plaintiff's claim against DOCS is barred by the Eleventh Amendment; and (2) the allegations of Plaintiff's Complaint are too lacking in detail to give Defendants *fair notice* under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 2-5 [Defs.' Memo. of Law].)

**II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM**

Under Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2); [26] or (2) a challenge to the legal cognizability of the claim. [27]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed.R.Civ.P. 8(a)(2) requires that the pleading contain a short and plain statement that

"give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [28] The main purpose of this rule is to "facilitate a proper decision on the merits." [29] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [30]

The Supreme Court has long characterized this pleading requirement under Fed.R.Civ.P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement. [31] However, it is well established that even this liberal notice pleading standard "has its limits." [32] As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard. [33]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly,* the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007). [34] Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Fed.R.Civ.P. 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74.

**\*5** More specifically, the Court reasoned that, by requiring that a pleading "show[ ] that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id.* at 1965, n. 3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading contain at least "some factual allegation[s]." *Id.* [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of

course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Twombly* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Twombly* ). [35] The Second Circuit has also recognized that this *plausibility* standard governs claims brought even by *pro se* litigants (although the plausibility of those claims is be assessed generously, in light of the special solicitude normally afforded *pro se* litigants). [36]

It should be emphasized that Fed.R.Civ.P. 8's plausibly standard, explained in *Twombly,* was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus,* in which the Court stated, "Specific facts are not necessary" to successfully state a claim under Fed.R.Civ.P. 8(a)(2). *Erickson v. Pardus,* 551 U.S. 89, ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) [citation omitted]. That statement was merely an abbreviation of the often-repeated point of law-first offered in *Conley* and repeated in *Twombly*-that a pleading need not "set out in detail the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly,* 127 S.Ct. 1965, n. 3 (citing *Conley v. Gibson,* 355 U.S. 41, 47 [1957] ). That statement in no way meant that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of the nature of the claim and the "grounds" on which the claim rests without ever having to allege any facts whatsoever. [37] There must still be enough fact alleged to raise a right to relief above the speculative level to a plausible level, so that the defendant may know what the claims are and the grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." [38] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the

complaint is submitted *pro se.*" [39] In other words, as stated above, while all pleadings are to be construed liberally under Fed.R.Civ.P. 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality . [40]

**\*6** For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [41] Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [42] Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [43] Of course, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [44] In addition, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading. [45]

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has very recently observed), [46] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed.R.Civ.P. 8, 10 and 12. [47] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed.R.Civ.P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. [48] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended." [49]

### III. ANALYSIS

### A. Whether Plaintiff's Claim Against DOCS is Barred by the Eleventh Amendment

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's constitutional claims against Defendant DOCS are barred by the Eleventh Amendment to the United States

Constitution. (Dkt. No. 16, Part 2, at 2-3 [Defs.' Mem. of Law].) In the interest of brevity, I will not repeat the well-established points of law that they correctly cite in support of their argument. Instead, I will only add three points that Defendants do *not* make in their succinct argument: (1) where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case (or claim), and "the case [or claim] *must* be stricken from the docket"; [50] (2) Plaintiff's civil rights claims against Defendant DOCS (an entity) are barred also by the express language of 42 U.S.C. § 1983, which confers liability upon only any *"person* who ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws .... " [51]; and (3) because the defect with this claim is substantive rather than merely formal, better pleading will not cure it, and thus it should be dismissed with prejudice. [52]

**\*7** For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's claims against Defendant DOCS.

It should be noted that, in addition to barring Plaintiff's constitutional claims against Defendant DOCS, the Eleventh Amendment would also bar any claim by Plaintiff against Defendants Bleau, Peacock and Varkiar in their official capacities. [53] However, because I do not even liberally construe Plaintiff's Complaint (and Response Affidavit) as asserting such claims, no need exists to recommend the dismissal of those claims. (*See generally* Dkt. No 1, 17.)

### B. Whether the Allegations of Plaintiff's Complaint Are Too Lacking in Detail to Give Defendants *Fair Notice* under Fed.R.Civ.P. 8(a)(2)

For the reasons offered by Defendants in their Memorandum of Law, I agree with them that Plaintiff's Complaint-when considered alone-is too lacking in detail to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). (Dkt. No. 16, Part 2, at 3-5 [Defs.' Mem. of Law].) However, as explained above in Part II of this Report-Recommendation, the mandate to read the papers of *pro se* civil rights litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending

the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint. [54] Here, when construing Plaintiff's Complaint together with his Response Affidavit, I find that Plaintiff's allegations *are* detailed enough to give Defendants the fair notice that is required under Fed.R.Civ.P. 8(a)(2). *See, supra,* Part I.A. of this Report-Recommendation.

However, this does not end the Court's analysis of Plaintiff's Complaint because, even where a defendant has not advanced a certain argument on a motion to dismiss in a *pro se* prisoner civil rights case, a district court may (and, indeed, has a duty to) *sua sponte* address whether the pleading in such a case has successfully stated a claim upon which relief may be granted. [55] Here, Plaintiff's Complaint is plagued by several defects (some substantive and some formal) [56] that simply cannot be overlooked.

**C. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau, Peacock and Varkiar Arising Out of Plaintiff's Being Required to Provide a Urine Sample Given Their Knowledge of His Medications and/or Medical Condition**

Among Plaintiff's claims is a claim that "[i]t is neither lawful nor [ ] reasonable to expect an Inmate to perform a bodily function on command when you know or should know that his medical condition and prescribed treatment plan indicate that when he urinates[,] and when he [can] not[,] can be beyond his control." (Dkt. No. 17, at 5 [Plf.'s Response Affid.].) I liberally construe this claim as one of harassment or perhaps inadequate-prison-conditions under the Eighth Amendment. (To the extent that this allegation is also used to support a procedural due process claim under the Fourteenth Amendment, I address that claim below in Parts III.D. and III.E. of this Report-Recommendation.)

**\*8** The problem with Plaintiff's Eighth Amendment claim is that the rather detailed facts alleged by him in support of that claim do not suggest in any way that any of the three individual Defendants were acting with the sort of mental state that is required for them to incur liability under the Eighth Amendment, namely, *deliberate indifference.* Deliberate indifference is a state of mind akin to *criminal recklessness,* which involves *knowing* of and disregarding an excessive risk to inmate health or safety. [57] Here, Plaintiff himself alleges that the

three individual Defendants did not in fact *understand* that he could not urinate due to his prostate condition. Indeed, as he was trying to explain his medical condition to Defendants, (1) Defendant Bleau became angry and "walked away" from Plaintiff, (2) Defendant Peacock told Plaintiff to "[s]hut up," and (3) Defendant Varkiar failed to call back the person in the medical unit of Riverview C.F. and ask him or her to report (to Varkiar) the impact of Plaintiff's prostate condition on his ability to urinate. *See, supra,* Part I.A. of this Report-Recommendation. [58]

At its heart, Plaintiff's Eighth Amendment claim alleges that the three individual Defendants *should have known* that he could not urinate during the time in question due to his enlarged prostate, but that they did not know that fact because they *failed to investigate* the nature and effects of his prostate condition. In other words, his Eighth Amendment claim is one of *negligence.* Such a claim is simply not actionable under the Eighth Amendment (or any constitutional provision). As is often observed, "[D]eliberate indifference describes a state of mind more blameworthy than negligence." [59] Finally, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [60]

For all of these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Eighth Amendment claim.

**D. Whether Plaintiff Has Stated an Actionable Claim Against Defendants Bleau and Peacock Arising Out of His Receipt of an Erroneous or False Misbehavior Report**

It is well established that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997) (citing *Freeman v. Rideout,* 808 F.2d 949, 951 [2d Cir.1986] ). [61] Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there is "more, such as retaliation against the prisoner for exercising a constitutional right." *Boddie,* 105 F.3d at 862; *accord, Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *26, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.) [citations omitted].

Here, Plaintiff alleges no actionable conduct regarding his being issued the misbehavior report in question,

such as retaliation against him for exercising a constitutional right. *See, supra,* Part I.A. of this Report-Recommendation. Moreover, because the defect with this detailed claim is substantive rather than merely formal, I find that better pleading will not cure it. [62]

**\*9** For these reasons, I recommend that the Court dismiss with prejudice Plaintiff's Fourteenth Amendment false-misbehavior-report claim.

### E. Whether Plaintiff Has Stated an Actionable Claim Against Defendant Varkiar Arising Out of Plaintiff's Erroneous or Unjustified Disciplinary Conviction

"[Courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State ...; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient .... " *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). With regard to the first question, in 1995, the Supreme Court held in *Sandin v. Connor* that liberty interests protected by the Fourteenth Amendment's Due Process Clause will not arise from the use of mandatory language of a particular state law or regulation, but "will generally be limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor,* 515 U.S. 472, 483-484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

Here, Plaintiff alleges that the disciplinary hearing conducted by Defendant Varkiar resulted in a sentence of eighty-seven (87) days in the Riverview C.F. S.H.U. with a corresponding loss of privileges. *See, supra,* Part I.A. of this Report-Recommendation. Numerous district courts in this Circuit have issued well-reasoned decisions finding no atypical and significant hardship experienced by inmates who served sentences in S.H.U. of far more than the eighty-seven (87) days alleged here-even where the conditions of confinement in the S.H.U. were, to varying degrees, more restrictive than those in the prison's general population. [63] As a result, I find that Plaintiff has not alleged facts plausibly suggesting that he possessed, during the disciplinary hearing, a liberty interest that was protected by the Fourteenth Amendment.

However, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice. This is because it is conceivable to me that Plaintiff's Complaint and Response Affidavit-which are silent with regard to the conditions of confinement he experienced in the Riverview C.F. S.H.U.-may be amended so as to allege facts plausibly suggesting that those conditions were so restrictive as to impose on Plaintiff an *atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life* (thus conferring on him a protected liberty interest under the Fourteenth Amendment).

I should also point out that, even assuming (for the sake of argument) that Plaintiff possessed a protected liberty interest with regard to his disciplinary hearing, I find that he has alleged facts plausibly suggesting that he was, in fact, given all the process that he was due under the circumstances. Specifically, Plaintiff alleges that he was given the following: (1) timely notice of the misbehavior report: (2) an "opportunity to explain [him]self" at his disciplinary hearing; (3) a written disciplinary hearing disposition; (4) a disciplinary hearing disposition that was based on at least some evidence (e.g., his own hearing testimony, which Defendant Varkiar found to be not credible); and (5) an opportunity to appeal the disciplinary hearing disposition (which he did so successfully). *See, supra,* Part I.A. of this Report-Recommendation.

**\*10** Of course, the defect that Plaintiff alleges occurred at his disciplinary hearing was Defendant Varkiar's failure to use the telephone to call back the person in the medical unit at Riverview C .F. and request that he or she again answer the question of whether Plaintiff was physically unable to urinate, taking into account his prostate condition as shown by his medical records. *Id.* Generally, it is not the duty of an impartial hearing officer to conduct an investigation of the merit of the disciplinary charges against an inmate; rather, the duty of a hearing officer is merely to review the evidence presented to him at the disciplinary hearing, and in *certain circumstances* identify defense witnesses for the inmate. [64] Here, I find that Plaintiff has alleged no circumstances conferring on Defendant Varkiar a duty to call back the medical unit at Riverview C.F. For example, I find that Plaintiff's Complaint and Response Affidavit are devoid of any allegation that, at his disciplinary hearing, he requested and was denied an adjournment of the hearing so that, with the help of a legal assistant, he could obtain his medical records and call as a witness a member of the

medical unit, in order that he himself could introduce testimony that his prostate condition prevented him from urinating during the time in question. *See, supra,* Part I.A. of this Report-Recommendation. However, again, such a finding leads only to a recommendation that this claim be dismissed *without* prejudice, because it is conceivable to me that Plaintiff's Complaint and Response Affidavit may be amended to allege facts plausibly suggesting that, at his disciplinary hearing, he made, and was denied, such a request.

For these reasons, I recommend that the Court dismiss Plaintiff's Fourteenth Amendment procedural due process claim regarding his disciplinary hearing if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing.

Finally, two points bear mentioning. First, to the extent that Plaintiff is attempting to allege that his procedural due process rights were violated at his disciplinary hearing also because Defendant Bleau violated Part D.4. of DOCS Directive 4937 by giving Plaintiff only two cups of water during the three-hour period in question, that allegation is not actionable under the circumstances. Section 1983 provides, in pertinent part, "Every person who ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws,* shall be liable to the party injured ...." 42 U.S.C. § 1983 [emphasis added]. The term "the Constitution and laws" refers to the United States Constitution and *federal* laws. [65] A violation of a state law or regulation, *in and of itself,* does not give rise to liability under 42 U.S.C. § 1983. [66] Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New York State law or regulation; [67] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive. [68]

**\*11** Second, in making the above recommendation (that Plaintiff be required to file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing, upon

penalty of dismissal), I am in no way "issuing specific instructions [to Plaintiff] mandating the content and format of the putative amended complaint"-instructions that the Second Circuit recently found erroneous in the case of *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at \*6 (2d Cir. Aug.12, 2008). Rather, I am merely reporting my finding that Plaintiff's current Fourteenth Amendment procedural due process claim regarding his disciplinary hearing fails to state a claim upon which relief might be granted, as pleaded.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 16) be ***GRANTED* in part** and ***DENIED* in part** in the following respects:

(1) Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Varkiar regarding his disciplinary hearing be ***DISMISSED*** if, within thirty (30) days from the date of the Court's final Order on this Report-Recommendation, Plaintiff does not file an Amended Complaint that successfully states a Fourteenth Amendment procedural due process claim regarding his disciplinary hearing; and

(2) The other claims asserted in Plaintiff's Complaint (as effectively amended by his Response Affidavit) be ***DISMISSED*** with prejudice, and without condition.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day).** *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed.R.Civ.P. 6(a)(2), (d).

**BE ADVISED that the District Court, on** *de novo* **review, will ordinarily refuse to consider arguments, case law and/ or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.** [69]

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered.** *Roldan v. Racette,*

984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of H.H.S.,* 892 F.2d 15 [2d Cir.1989] ).

30    *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion), *accord, Hudson v. Artuz,* 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov.30, 1998), *Flores v. Bessereau,* 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J .). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

1    *See, infra,* note 41 of this Report-Recommendation (citing cases).

2    (Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

3    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.].)

4    (Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"].)

5    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 8 [Ex. 1 to Plf.'s Response Affid., attaching completed form entitled, "Request for Urinalysis Test"]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

6    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 14 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

7    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid ., attaching page from DOCS Directive 4937].)

8    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 10 [Ex. 3 to Plf.'s Response Affid., attaching page from DOCS Directive 4937].)

9    (Dkt. No. 1, ¶¶ 6-7 [Plf.'s Compl.]; Dkt. No. 17, at 4 [Plf .'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

10    (Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid., attaching Inmate Misbehavior Report].)

11    (Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

12    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 4, 5 [Plf.'s Response Affid.]; Dkt. No. 17, at 9 [Ex. 2 to Plf.'s Response Affid., attaching page of his Ambulatory Health Record].)

13    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 5 [Plf.'s Response Affid.].)

14    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 11 [Ex. 4 to Plf.'s Response Affid ., attaching Inmate Misbehavior Report].)

15    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

16    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

17    (*Id.*)

18    (Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006].)

19    (Dkt. No. 17, at 2-3 [Plf.'s Response Affid.]; Dkt. No. 17, at 14-15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid., attaching page of information about Flomax].)

20    (Dkt. No. 1, ¶ 7 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 17 [Ex. 6 to Plf.'s Response Affid ., attaching page of information about Flomax].)

21    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3 [Plf.'s Response Affid.]; Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition].)

22    (Dkt. No. 17, at 12-13 [Ex. 5 to Plf.'s Response Affid., attaching Superintendent Hearing Disposition]; Dkt. No. 17, at 3 [Plf.'s Response Affid.].)

23    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 3-4 [Plf.'s Response Affid.]; Dkt. No. 17, at 15 [Ex. 7 to Plf.'s Response Affid., attaching Plaintiff's letter of appeal, dated November 27, 2006]; Dkt. No. 17, at 16 [Ex. 8 to Plf.'s Response Affid., attaching Donald Selsky's Review of Superintendent's Hearing, issued on January 19, 2007].)

24    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.]; Dkt. No. 17, at 2 [Plf.'s Response Affid.].)

25    (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

26    *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

27    *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of

disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ( "Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") [citation omitted]; *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7, 2002 WL 313156 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b] [6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

28    *Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 1634, 161 L.Ed.2d 577 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz,* 534 U .S. at 512 [citation omitted]; *Leathermana v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) [citation omitted].

29    *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

31    *See, e.g., Swierkiewicz,* 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

32    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003).

33    *See, e.g., Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, ---- - ----, 127 S.Ct. 1955, 1964-1974, 167 L.Ed.2d 929 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Dura Pharmaceuticals,*

125 S.Ct. at 1634-1635, *Christopher v. Harbury,* 536 U.S. 403, 416-422, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr.26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

34    The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint.... *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly,* 127 S.Ct. at 1969.

35    *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted]; *Goldstein v. Pataki,* 07-CV-2537, 2008 U.S.App. LEXIS 2241, at *14, 2008 WL 269100 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires ... that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level ....' ") [internal citation omitted]; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98, n. 2 (2d Cir.2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty,* 490 F.3d 143, 157-58 (2d Cir.2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly* ] is ...

requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible.*" ) [emphasis in original].

36    *See, e.g., Jacobs v. Mostow,* 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim up relief that is plausible on its face.' ") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c] [1] ); *Boykin v. KeyCorp.,* 521 F.3d 202, 215-16 (2d Cir.2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

37    For example, in *Erickson,* a district court had dismissed a *pro se* prisoner's civil rights complaint because, although the complaint was otherwise factually specific as to how the prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of approximately 18 months, the complaint (according to the district court) failed to allege facts plausibly suggesting that the termination caused the prisoner "substantial harm." 127 S.Ct. at 2199. The Supreme Court vacated and remanded the case because (1) under Fed.R.Civ.P. 8 and *Twombly,* all that is required is a "a short and plain statement of the claim" sufficient to "give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the plaintiff had alleged that the termination of his hepatitis C medication for 18 months was "endangering [his] life" and that he was "still in need of treatment for [the] disease." *Id.* at 2200. While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision (and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need mentioning in the short decision: a claim of deliberate indifference to a serious medical need under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental state possessed by prison officials with regard to that sufficiently serious medical need. The *Erickson* decision had to do with only the first element, not the second element. *Id.* at 2199-2200. In particular, the decision was merely recognizing that an allegation by a plaintiff that, during the relevant time period, he suffered from

hepatis C is, in and of itself, a factual allegation plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not *also* allege that he suffered an independent and "substantial injury" as a result of the termination of his hepatis C medication. *Id.* This point of law is hardly a novel one. For example, numerous decisions, from district courts within the Second Circuit alone, have found that suffering from hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment. *See, e .g., Rose v. Alves,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept.9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan.23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

38    *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

39    *Hernandez,* 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) [citation omitted].

40    *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers ....") [internal quotation marks and citation omitted]; *McEachin v. McGinnis,* 357 F.3d 197, 200 (2d Cir.2004) ("[W]hen the plaintiff proceeds pro se, ... a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.") [citation omitted].

41    "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov.17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the

allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

42    *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) [internal quotation and citation omitted].

43    *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) [internal quotation and citation omitted]; *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

44    *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

45    *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *2, n. 14 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5, n. 34 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4, n. 30 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.,* 03-CV-0407, 2006 WL 2794415, at *5, n. 18 (N.D.N.Y. Sept., 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver,* 03-CV-0912, 2006 WL 2799417, at *4, n .16 (N.D.N.Y. Sept. 26, 2006) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

46    *See Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug.12,

2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") [citation omitted].

47    See *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord, Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691] [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit]; *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

48    See *McNeil v. U.S.,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

49    *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980); *accord, Standley v. Dennison,* 05-CV-1033, 2007 WL 2406909, at *6, n. 27 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at

*2 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F.Supp.2d 305, 307 (W.D.N.Y.2007); *Cosby v. City of White Plains,* 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb.9, 2007); *Lopez v. Wright,* 05-CV-1568, 2007 WL 388919, at *3, n. 11 (N.D.N.Y. Jan.31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan.23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.,* 04-CV-1262, 2007 WL 119453, at *2, n. 13 (N.D.N.Y. Jan.10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons,* 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan.4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

50    *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) [citation omitted]; *see also* Fed.R.Civ.P. 12(h)(3).

51    42 U.S.C. § 1983 [emphasis added].

52    *See, supra,* note 44 of this Report-Recommendation.

53    See *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66,

105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity."); *see also Holloway v. Selsky,* 05-CV-0501, 2007 WL 433375, at *4 (N.D.N.Y. Feb.6, 2007) (Sharpe, J.) [citing cases].

54      *See, infra,* note 41 of this Report-Recommendation (citing cases).

55      The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis* ] at any time if the court determines that ... the action ... is frivolous or malicious[,] ... fails to state a claim on which relief may be granted[,] ... or ... seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall ... dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted ...."

56      As explained above in Part II of this Report-Recommendation, a dismissal for failure to state a claim may be based not only on a successful challenge to the "sufficiency of the pleading" under Fed.R.Civ.P. 8(a)(2), but also on a successful challenge to the legal cognizability of the claims asserted in the pleading. *See, supra,* notes 26 and 27 of this Report-Recommendation.

57      *Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for "deliberate indifference" under the Eighth Amendment."); *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted]; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("The subjective element

requires a state of mind that is the equivalent of criminal recklessness ....") [citation omitted]; *accord, Koehl v. Greene,* 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept.26, 2007) (Kahn, J.), *Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *15, n. 124 (N.D.N.Y. Jan.23, 2007) (Kahn, J.), *Salaam v. Adams,* 03-CV-0517, 2006 WL 2827687, at *10, n. 59 (N.D.N.Y. Sept.29, 2006) (Kahn, J.).

58      In addition, it is worth noting that Plaintiff's explanation to Defendant Bleau consisted of a statement that Plaintiff could not urinate because of his prostate *medication,* not because of his prostate *condition. See, supra,* Part I.A. of this Report-Recommendation. As a result, Defendant Bleau would not have become *aware* of the reason for Plaintiff's inability to urinate (which Plaintiff now alleges was his prostate *condition,* not his prostate *medication* ), even if Defendant Bleau had remained in Plaintiff's presence and listened to his explanation.

59      *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence."); *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Murphy v. Grabo,* 94-CV-1684, 1998 WL 166840, at *4 (N.D.N.Y. Apr.9, 1998) (Pooler, J .) ("Deliberate indifference, whether evidenced by [prison] medical staff or by [prison] officials who allegedly disregard the instructions of [prison] medical staff, requires more than negligence.... Disagreement with prescribed treatment does not rise to the level of a constitutional claim.... Additionally, negligence by physicians, even amounting to malpractice, does not become a constitutional violation merely because the plaintiff is an inmate.... Thus, claims of malpractice or disagreement with treatment are not actionable under section 1983.") [citations omitted]").

60      *See, supra,* note 44 of this Report-Recommendation.

61      *Accord, Lugo v. Van Orden,* 07-CV-0879, 2008 U.S. Dist. LEXIS 56707, at *7, 2008 WL 2884925 (N.D.N.Y. July 23, 2008) (McAvoy, J.); *Darvie v. Countryman,* 08-CV-0715, 2008 U.S. Dist. LEXIS 60931, 2008 WL 3286250 (N.D.N.Y. Aug. 7, 2008)

(Sharpe, J.), *adopting* 2008 U.S. Dist. LEXIS 52797, at *18, n. 5, 2008 WL 2725071 (N.D.N.Y. July 10, 2008) (Lowe, M.J.); *Anderson v. Banks,* 06-CV-0625, 2008 U.S. Dist. LEXIS 60896, at *16-17, 2008 WL 3285917 (N.D.N.Y. May 19, 2008) (Homer, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 60932, 2008 WL 3285917 (N.D.N.Y. Aug. 6, 2008) (Sharpe, J.); *Stewartson v. Almstead,* 04-CV-1097, 2008 U.S. Dist. LEXIS 22178, at *7, 2008 WL 783367 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *McEachin v. Goord,* 06-CV-1192, 2008 U.S. Dist. LEXIS 27479, at *12, 2008 WL 1788440 (N.D.N.Y. Feb. 8, 2008) (Treece, M.J.), *adopted by* 2008 U.S. Dist. LEXIS 31879, 2008 WL 1788440 (N.D.N.Y. Apr. 17, 2008) (Hurd, J.); *Murray v. Pataki,* 03-CV-1263, 2007 U.S. Dist. LEXIS 26959, at *27, 2007 WL 965345 (N.D.N.Y. March 5, 2007) (Treece, M.J.), *adopted by* 2007 U.S. Dist. LEXIS 23065, 2007 WL 956941 (N.D.N.Y. March 29, 2007) (Kahn, J.); *Madera v. Goord,* 103 F.Supp.2d 536, 542 (N.D.N.Y.2000) (Kahn, J., adopting Report-Recommendation by Di Bianco, M.J.).

62    *See, supra,* note 44 of this Report-Recommendation.

63    *See, e.g., Spence v. Senkowski,* 91-CV-0955, 1998 WL 214719, at *3 (N.D.N.Y. Apr.17, 1998) (McCurn, J.) (180 days that plaintiff spent in S.H.U., where he was subjected to numerous conditions of confinement that were more restrictive than those in general population, did not constitute atypical and significant hardship in relation to ordinary incidents of prison life); *accord, Husbands v. McClellan,* 990 F.Supp. 214, 217-19 (W.D.N.Y.1998) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Warren v. Irvin,* 985 F.Supp. 350, 353-56 (W.D.N.Y.1997) (161 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Ruiz v. Selsky,* 96-CV-2003, 1997 WL 137448, at *4-6 (S.D.N.Y.1997) (192 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Horne v. Coughlin,* 949 F.Supp. 112, 116-17 (N.D.N.Y.1996) (Smith, M.J.) (180 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Nogueras v. Coughlin,* 94-CV-4094, 1996 WL 487951, at *4-5 (S.D.N.Y. Aug.27, 1996) (210 days in S.H.U. under numerous conditions of confinement that were more restrictive than those in general population); *Carter v. Carriero,* 905 F.Supp. 99, 103-04 (W.D.N.Y.1995) (270 days in S.H.U.

under numerous conditions of confinement that were more restrictive than those in general population).

64    *Jackson v. Onondaga County,* 05-CV-1393, 2008 U.S. Dist. LEXIS 64930, at *40 & n. 46, 549 F. Supp. 2d 204 (N.D.N.Y. Jan. 8, 2008) (Lowe, M.J.) [citations omitted], *adopted on* de novo *review by* 05-CV-1393, 2008 U.S. Dist. LEXIS 22175, 2008 WL 782655 (N.D.N.Y. March 20, 2008) (McAvoy, J.); *see also Martin v. Mitchell,* 92-CV-0716, 1995 U.S. Dist. LEXIS 19006, at *10-12, 1995 WL 760651 (N.D.N.Y. Nov. 24, 1995) (McAvoy, C.J.) (rejecting plaintiff's assertion that prison disciplinary hearing officer "had a duty to investigate the identity of [a correction officer identified by the plaintiff merely as] 'Budd' and call him to testify"); *Hampton v. McGinnis,* 89-CV-6344, 1992 U.S. Dist. LEXIS 15696, at *6, 1992 WL 309553 (S.D.N.Y. Oct. 15, 1992) ("[I]t was not [the disciplinary hearing officer's] duty to investigate [the prisoner's assault] claim, and plaintiff was not precluded from offering his own evidence on that subject."); *cf. Kingsley v. Bureau of Prisons,* 937 F.2d 26, 31 (2d Cir.1991) (under circumstances, a hearing officer did have a duty to identify the name of the plaintiff's desired witness because [1] the plaintiff had an "especially compelling" need for the witness, [2] the witness's identity was "readily available" to the hearing officer, [3] the plaintiff had arrived at the prison only five days earlier, [4] fulfilling the request would not have delayed the imposition of "swift discipline," and [5] "no other institutional objective was implicated").

65    *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery. First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States."* ) (emphasis added); *Patterson v. Coughlin,* 761 F.2d 886, 890 (2d Cir.1985) ("Recovery under 42 U.S.C. § 1983 ... is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right ....") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.,* 847 F.Supp. 1046, 1056 (W.D.N.Y.1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States."* ) [emphasis added].

66    *See Doe v. Conn. Dept. of Child & Youth Servs.,* 911 F.2d 868, 869 (2d Cir.1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives

defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson,* 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 ...." ) (citation omitted); *Murray v. Michael,* 03-CV-1434, 2005 WL 2204985, at * 10 (N.D.N.Y. Sept.7, 2005) (DiBianco, M.J.) ("[A]ny violations of state regulations governing the procedures for disciplinary hearings ... do not rise to the level of constitutional violations.") (citation omitted); *Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.' ") (citing *Russell v. Coughlin,* 910 F.2d 75, 78 n. 1 [2d Cir.1990] ).

67    *See Rivera v. Wohlrab,* 232 F.Supp.2d 117, 123 (S.D.N.Y.2002) (citation omitted); *Lopez v. Reynolds,* 998 F.Supp. 252, 259 (W.D.N.Y.1997).

68    *See Farinaro v. Coughlin,* 642 F.Supp. 276, 280 (S.D.N.Y.1986).

69    *See, e.g., Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered

no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at * 18 n. 8 (S.D.N.Y. Sept.30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.,* 200 F.3d 895, 902, n. 1 (6th Cir.2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir.1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley,* 28 F.3d 532, 535 (5th Cir.1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] ... Respondent has waived procedural default ... objection [ ].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.,* 863 F.2d 633, 638-39 (9th Cir.1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty,* 977 F.2d 1347 (9th Cir.1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir.1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].

## All Citations

Not Reported in F.Supp.2d, 2008 WL 4693153

2012 WL 1030415
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Victor Altheus DE PONCEAU, Plaintiff,

v.

J. BRUNER, Corrections Officer; J. Smith,
Corrections Lieutenant; C. Goodman, Corrections
Lieutenant; D. Murray, Watch Commander;
D. Williams, Grievance Sergeant; Reynolds,
Corrections Sergeant; Russell, Corrections Officer;
J. Taylor, Corrections Officer; Pomainville,
Corrections Officer; LeDuca, Corrections
Sergeant, and John and Jane Does, Great
Meadow Correctional Facility, Defendants.

Civil Action No. 9:09–CV–00605 (GTS/DEP).
|
Feb. 21, 2012.

**Attorneys and Law Firms**

Victor Altheus De Ponceau, Comstock, NY, pro se.

Hon. Eric T. Schneiderman, Office of the Attorney
General, State of New York, Department of Law, Cathy
Y. Sheehan, Esq., Assistant Attorney General, of Counsel,
Albany, NY, for Defendants.

*REPORT, RECOMMENDATION AND ORDER*

DAVID E. PEEBLES, United States Magistrate Judge.

**\*1** *Pro se* plaintiff Victor Altheus De Ponceau, a
New York State inmate and an active litigant before
this and other federal courts within New York, has
commenced this action pursuant to 42 U.S.C. § 1983
alleging deprivation of his civil rights. Since inception of
the action both the number of defendants sued and the
claims asserted have been radically reduced as a result
of court review of his earlier filed pleadings. Plaintiff's
currently operative complaint, though vague, disjointed,
and unorganized, appears to assert claims arising from
defendants' alleged use of excessive force; failure to
intervene and protect him from assault; retaliation,
threats, and harassment; the issuance of one or more false

misbehavior reports; and, interference on one occasion
with his incoming packages.

Currently pending before the court in connection with this
action is a motion by those defendants remaining in the
case seeking dismissal of plaintiff's claims for failure to
state a cause of action upon which relief may be granted.
For the reasons set forth below, I recommend a finding
that plaintiff has stated plausible claims alleging the use
of excessive force and failure to protect, but that the
remaining causes of action set forth in his complaint be
dismissed as facially insufficient. [1]

[1]    Also pending before the court are various
       applications of a miscellaneous nature from the
       plaintiff. For the reasons set forth below, I
       recommend denial of those applications, which are
       both vague and to a significant degree indecipherable.

I. *BACKGROUND* [2]

[2]    In light of the procedural posture of this case,
       the following recitation is drawn principally from
       plaintiff's amended complaint, the contents of which
       have been accepted as true for purposes of the
       pending motion. *See Erickson v. Pardus,* 551 U.S. 89,
       94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)
       (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–
       56, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007)); *see
       also Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733,
       1734, 12 L.Ed.2d 1030 (1964). It should be noted,
       however, that plaintiff's third amended complaint
       and attachments appear to be rambling, unorganized,
       vague and confusing, making it exceedingly difficult
       to discern both the claims being asserted and the
       factual underpinnings supporting those claims.

Plaintiff is a prison inmate entrusted to the care
and custody of the New York State Department of
Corrections and Community Supervision ("DOCCS").
*See generally* Third Amended Complaint (Dkt. No. 24).
At the times relevant to his claims plaintiff was confined
in the Great Meadow Correctional Facility ("Great
Meadow"), located in Comstock, New York, where he is
currently incarcerated. *Id.*

On September 13, 2008, plaintiff was verbally insulted
and physically attacked by Corrections Sergeant Leduca,
who choked him, kicked his back, and pushed his face
into a door with the assistance of Grievance Sergeant
D. Williams and Watch Commander D. Murray. Third

Amended Complaint (Dkt. No. 24) p. 1. Plaintiff accuses Corrections Lieutenant J. Smith of covering up Sergeant Leduca's racial hatred and assault. *Id.*

Though somewhat unclear from the plaintiff's complaint and attachments, it appears that De Ponceau was accused of misbehavior in connection with the incident, resulting in the convening of a Tier III disciplinary hearing conducted by Corrections Lieutenant C. Goodman to address the matter.[3] Third Amended Complaint (Dkt. No. 24) at p. 1. Plaintiff asserts that the hearing was "one sided", in retaliation for his placing a call to the New York State Police concerning the incident. *Id.*

[3]     The DOCCS conducts three types of inmate disciplinary hearings. See 7 N.Y.C.R.R. § 270.3. Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges. Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU"). Tier III hearings concern the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits. See *Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied,* 525 U.S. 907, 119 S.Ct. 246, 142 L.Ed.2d 202 (1998).

In addition to the September 2008 incident and resulting hearing, plaintiff's complaint addresses other matters. Plaintiff alleges, for example, that he was threatened with harm by Corrections Officer J. Bruner and that defendant Bruner issued him a false misbehavior report in July 2008.[4] Third Amended Complaint (Dkt. No. 24) at p. 1. Plaintiff additionally asserts that Corrections Sergeant Reynolds, as well as John and Jane Doe defendants working in the package room at Great Meadow, withheld a package from him, allegedly in retaliation for his role in the Sergeant Leduca incident. *Id.* at p. 2. Plaintiff further accuses Corrections Officers Russell and J. Taylor of threatening him with bodily harm, and claims that Corrections Officer Pomainville authored a false misbehavior report regarding DePonceau on November 20, 2008, and lied at a subsequent hearing, also conducted by defendant C. Goodman, concerning the matter.[5] *Id.*

[4]     According to the exhibits submitted by the plaintiff, the misbehavior report issued in July 2008 by defendant J. Bruner led to a disciplinary hearing and a finding of guilt with regard to prison rules

violations, resulting in a brief sentence of keeplock confinement and loss of package, commissary, and telephone privileges, a sentence that was suspended to November 17, 2008. Plaintiff's Exhibits (Dkt. No. 56–6) at p. 49 of 93.

[5]     The record before the court regarding the November 2008 misbehavior report is equivocal. While plaintiff asserts that the misbehavior report was issued by defendant Pomainville and resulted in a hearing conducted by corrections Lieutenant C. Goodman, Third Amendment Complaint (Dkt. No. 24) at p. 2, the documents submitted by the plaintiff in opposition to defendants' motion suggest that it was Lieutenant Goodman who issued a misbehavior report and that another individual, identified as Hearing Officer Harvey, actually presided over the disciplinary proceeding. Plaintiff's opposition (Dkt. No. 56–6) at p. 48 of 93. Those documents also reflect that the hearing resulted in a finding of guilt and a penalty which included three months of keeplock confinement as well as a loss of package, commissary and telephone privileges. That determination was upheld on appeal to DOCCS Central Office. *See id.*

II. *PROCEDURAL HISTORY*[6]

[6]     On more than one occasion DePonceau has requested a copy of the docket sheet pertaining to this action. *See* Dkt. Nos. 56, 69. As an accommodation to the plaintiff, and in deference to his *pro se* status, the clerk will respectfully be directed to provide him with a copy of the current docket sheet relating to this action.

**\*2** Plaintiff commenced this action by the filing of a complaint on May 26, 2009, accompanied by an IFP application. Dkt. Nos. 1, 2. In his initial complaint, which consisted of fifty-one pages of handwritten text together with two hundred and twenty-two pages of unorganized, unnumbered, largely unidentifiable and, in some instances, incomplete, exhibits De Ponceau asserted a wide array of civil rights violations alleged to have occurred both before his incarceration and while imprisoned against two hundred and two defendants, including the United States of America, the State of New York, Monroe County, the City of Rochester, Livingston County, eleven Assistant District Attorneys, various attorneys appointed to represent him in criminal proceedings, at least twenty judicial officers (including judicial hearing officers and state and federal court judges), other public officials, numerous employees of the DOCCS, and several other individuals and entities. By decision and order dated October 27, 2009, the

court granted plaintiff IFP status, denied his motion for appointment of counsel, and conditionally dismissed his complaint for frivolousness and failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915(A), with leave to file an amended complaint in compliance with the terms of that order. Dkt. No. 12.

Plaintiff filed an amended complaint on November 9, 2009. Dkt. No. 13. Four days later, on November 13, 2009, he filed both a second amended complaint and a motion to reinstate his original complaint, together with a motion for reconsideration of the court's October 27, 2009 order denying his motion for appointment of counsel. Dkt. Nos. 14, 15, 16. On November 19, 2009 plaintiff filed a motion for leave to add various other parties as defendants, together with a motion for an evidentiary hearing. Dkt. Nos. 17, 18. Plaintiff filed a second motion for reconsideration of the October 27, 2009 order regarding his application for appointment of counsel on December 7, 2009. Dkt. No. 21. By decision and order dated September 2, 2010, District Judge Glenn T. Suddaby directed the clerk to strike plaintiff's amended complaint; dismissed many of the named defendants from the action, some with and others without prejudice; identified the defendants remaining in the action; directed that plaintiff be permitted to pursue the claims set forth in his third amended complaint only with respect to the defendants at Great Meadow; and, denied the remaining applications made by the plaintiff. [7] Dkt. No. 23.

[7]     A subsequent application filed by the plaintiff seeking District Judge Suddaby's recusal and the transfer of the case out of the district's Syracuse division (Dkt. No. 26) was denied by decision and order issued by District Judge Suddaby on December 14, 2010. Dkt. No. 32.

As a result of the foregoing procedural history, the operative pleading now before the court is plaintiff's third amended complaint, which is comprised of designated portions of plaintiff's second amended complaint ordered by Judge Suddaby on September 2, 2010 to be filed as a third amended complaint. *See* Dkt. Nos. 23, 24. That amended complaint asserts a variety of claims alleging the utterance of threats and insults, the issuance of false misbehavior reports, the use of excessive force and failure to intervene and protect him from assault, a deprivation of procedural due process, and mail tampering. *Id.* Named as defendants are several DOCCS

employees assigned to work at Great Meadow, including Corrections Officer J. Bruner, Corrections Lieutenant J. Smith, Corrections Lieutenant C. Goodman, Watch Commander D. Murray, Grievance Officer D. Williams, Corrections Sergeant Reynolds, Corrections Officer Russell, Corrections Officer J. Taylor, Corrections Officer Pomainville, Corrections Sergeant Leduca, and unnamed "John Doe" and "Jane Doe" defendants. [8], [9] Plaintiff's third amended complaint is accompanied by approximately sixty-eight pages of exhibits which appear to be random documents, submitted without organization and most if not all of which are wholly unrelated to the matters remaining in controversy.

[8]     Plaintiff's third amended complaint also names Deputy of Programs Karen LaPolt and First Deputy P. Heath. Neither of those individuals is included within the list of defendants identified in the court's September 2, 2010 order as remaining in the case, however, and plaintiff has neither sought nor obtained court approval for leave to join those additional parties. Accordingly, they are not currently before the court.

   I note further that in the request for relief portion of his third amended complaint plaintiff reiterates his attack on the validity of his underlying conviction and sentence, and seeks release pursuant to 28 U.S.C. § 2254. Plaintiff's habeas claims, however, were previously dismissed, without prejudice, and have not been reinstated, *See* Order dated September 2, 2010 (Dkt. No. 23) at p. 48.

[9]     In accordance with this court's local rules, *see* N.D.N.Y.L.R. 9.2, plaintiff has filed a statement of a claim asserted under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq. See* Dkt. No. 57. However, plaintiff's third amended complaint, which is the currently-operative pleading, does not contain a civil RICO cause of action.

*3 In response to plaintiff's third amended complaint the remaining defendants in the action have moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss plaintiff's complaint for failure to state a claim upon which relief may be granted. Dkt. No. 54. In their motion defendants argue that 1) plaintiff has failed to state a plausible claim of excessive force; 2) plaintiff's allegations of the issuance of false misbehavior reports do not give rise to a finding of a constitutional violation; 3) plaintiff's allegations regarding verbal abuse are not actionable; 4) plaintiff's allegation of a single instance of a package being

withheld does not state a cognizable First Amendment mail interference claim; and, 5) plaintiff's conspiracy claim is not adequately pleaded. *Id.* Defendants further assert their entitlement to Eleventh Amendment immunity, to the extent they may be sued in their official capacities, and to qualified good faith immunity in connection with the claims against them as individuals, and seek a protective order precluding plaintiff from engaging in discovery pending a final disposition in regard to their motion. *Id.* Plaintiff has since responded in opposition to defendants' motion. [10] Dkt. No. 56.

[10]     Much of plaintiff's opposition focuses on both a civil RICO claim, which has not been properly pleaded, and the claim of academic fraud, which was previously dismissed by the court. *See* September 2, 2010 Decision and Order (Dkt. No. 23) at p. 49.

Defendants' dismissal motion, which is now fully briefed and ripe for determination, has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed.R.Civ.P. 72(b).

### III. *DISCUSSION*

#### A. *Dismissal Motion Standard*

A motion to dismiss a complaint, brought pursuant to Rule 12(b) (6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny. *Ashcroft v. Iqbal,* 556 U.S. 662, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 554, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929, ——, (2007)). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). *Id.* While modest in its requirement, that rule commands that a complaint contain more than mere legal conclusions; "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient facts which, when accepted as true, state a claim which is plausible on its face. *Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) (citing *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974). As the Second Circuit has observed, "[w]hile *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible.' " *In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 (2d Cir.2007) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. at 1974).

**\*4** When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson,* 127 S.Ct. at 2200 (" '[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers' ") (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976) (internal quotations omitted)); *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (citation omitted); *Donhauser v. Goord,* 314 F.Supp.2d 119, 121 (N.D.N.Y.2004) (Hurd, J.). In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704–05 (2d Cir.1991); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true and draw all inferences in favor of the non-moving party. *Cooper v. Pate,* 378 U.S. 546, 546, 84 S.Ct. 1723, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP,* 321 F.3d 292, 300 (2d Cir.2003), *cert. denied,* 540 U.S. 823, 124 S.Ct. 153, 157 L.Ed.2d 44 (2003); *Burke v. Gregory,* 356 F.Supp.2d 179, 182 (N.D.N.Y.2005) (Kahn, J.). However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Iqbal,* 129 S.Ct. at 1949. In the wake of *Twombly* and *Iqbal,* the burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) remains substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, " 'but whether the claimant is entitled to offer evidence to support the claims.' " *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.,* 223 F.Supp.2d 435, 441 (S.D.N.Y.2001) (quoting *Gant v. Wallingford Bd. of Educ.,*

[69 F.3d 669, 673 (2d Cir.1995)](citations and quotations omitted).

### B. *Excessive Force*

In their motion defendants first argue that plaintiff's threadbare and conclusory allegations regarding Corrections Sergeant Leduca's actions toward him, allegedly taken with the assistance of defendants Williams and Murray, fail to demonstrate the existence of a plausible excessive force claim.

Plaintiff's excessive force cause of action is asserted under the Eighth Amendment, which outlaws punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102, 104, 97 S.Ct. at 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle* ). A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084 (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir.1999).

**\*5** A prison employee's use of force against an inmate can in certain circumstances run afoul of the Eighth Amendment's prohibition against cruel and unusual punishment. The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7, 112 S.Ct. 995, 998–999, 117 L.Ed.2d 156 (1992) (applying *Whitley* to all excessive force claims); *Whitley,* 475 U.S. at 320–21, 106 S.Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom., John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973)).

Analysis of claims of cruel and unusual punishment requires both objective examination of the conduct's effect and a subjective inquiry into the defendant's motive for his or her conduct. *Wright v. Goord,* 554 F.3d 255, 268 (2d Cir.2009) (citing *Hudson,* 503 U.S. at 7–8, 112 S.Ct. at 999 and *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir.1999)). As was recently emphasized by the United States Supreme Court in *Wilkins v. Gaddy,* however, after *Hudson* the "core judicial inquiry" is focused not upon the extent of the injury sustained, but instead whether the nature of the force applied was nontrivial. ––– U.S. ––––, ––––, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010) (per curiam). Accordingly, when considering the subjective element of the governing Eighth Amendment test a court must be mindful that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.... This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000 (citations omitted); *Velasquez v. O'Keefe,* 899 F.Supp. 972, 973 (N.D.N.Y.1995) (McAvoy, C.J.) (quoting *Hudson,* 503 U.S. at 9, 112 S.Ct. at 1000); *see Romaine v. Rewson,* 140 F.Supp.2d 204, 211 (N.D.N.Y.2001) (Kahn, J.). Even a *de minimis* use of physical force can constitute cruel and unusual punishment if it is "repugnant to the conscience of mankind." *Hudson,* 503 U.S. at 9–10, 112 S.Ct. 1000 (citations omitted).

With its focus on the harm done, the objective prong of the inquiry is contextual and relies upon "contemporary standards of decency." *Wright,* 554 F.3d at 268 (quoting *Hudson,* 503 U.S. at 8, 112 S.Ct. at 1000) (internal quotations omitted)). When addressing this component of an excessive force claim under the Eighth Amendment calculus, the court can consider the extent of the injury suffered by the inmate plaintiff. While the absence of significant injury is certainly relevant, it is not dispositive. *Hudson,* 503 U.S. at 7, 112 S.Ct. at 999. The extent of an inmate's injury is but one of the factors to be considered in determining a prison official's use of force was "unnecessary and wanton"; courts should also consider the need for force, whether the force was proportionate to the need, the threat reasonably perceived by the officials, and what, if anything, the officials did to limit their use of force. *Whitley,* 475 U.S. at 321, 106 S.Ct. at 1085 (citing *Johnson,* 481 F.2d at 1033). "But when prison officials use force to cause harm maliciously

and sadistically, 'contemporary standards of decency are always violated .... This is true whether or not significant injury is evident.' " *Wright,* 554 F.3d at 268–69 (quoting *Hudson,* 503 U.S. at 9, 112 S Ct. at 1000).

 **\*6** That is not to say that "every malevolent touch by a prison guard gives rise to a federal cause of action." *Griffen,* 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir.1993)); *see also Johnson,* 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights"). Where a prisoner's allegations and evidentiary proffers, if credited, could reasonably allow a rational factfinder to find that corrections officers used force maliciously and sadistically, however, summary judgment dismissing an excessive use of force claim is inappropriate. *Wright,* 554 F.3d at 269 (citing *Scott v. Coughlin,* 344 F.3d 282, 291 (2d Cir.2003) (reversing summary dismissal of prisoner's complaint, though suggesting that prisoner's evidence of an Eighth Amendment violation was "thin" as to his claim that a corrections officer struck him in the head, neck, shoulder, wrist, abdomen, and groin, where the "medical records after the ... incident with [that officer] indicated only a slight injury")) (other citations omitted).

To be sure, plaintiff's allegations regarding the use of excessive force against him are extremely modest, with little elaboration regarding the circumstances associated with the claim. Nonetheless, in his third amended complaint plaintiff has set forth the date of the assault and identified the participants, alleging that with the assistance of defendants Murray and Williams, Corrections Sergeant Leduca choked him, kicked his back, and pushed his face into a door as part of a racially motivated assault. While it may well be that on a more fully-developed record plaintiff will be unable to sustain a cognizable excessive force claim based upon the incident described in his complaint, at this early procedural juncture I am unable to conclude with certainty that plaintiff has failed to state a plausible excessive force claim against defendants Leduca, Williams, and Murray. For this reason, I recommend denial of the portion of defendants' motion seeking dismissal of plaintiff's excessive force claim.[11]

[11]    It is unclear from plaintiff's complaint whether he alleges that defendants Murray and Williams actively participated in the assault, or instead that they merely stood by while it occurred. If it is the latter,

they may nonetheless bear responsibility for a civil rights violation growing out of the incident. *See Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir.1994). It is well-established that a law enforcement official has an affirmative duty to intervene on behalf of an individual whose constitutional rights are being violated in his presence by other officers. *See Mowry v. Noone,* No. 02–CV–6257 Fe, 2004 WL 2202645, at \*4 (W.D.N.Y. Sept.30, 2004); *see also Curley v. Village of Suffern,* 268 F.3d 65, 72 (2d Cir.2001) ("Failure to intercede results in [section 1983] liability where an officer observes excessive force being used or has reason to know that it will be.") (citations omitted). In order to establish liability on the part of a defendant under this theory, a plaintiff must prove the use of excessive force by someone other than the individual, and that the defendant under consideration 1) possessed actual knowledge of the use of excessive force by another corrections officer; 2) had a realistic opportunity to intervene and prevent the harm from occurring; and 3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. *See Curley,* 268 F.3d at 72; *see also Espada v. Schneider,* 522 F.Supp.2d 544, 555 (S.D.N.Y.2007). Mere inattention or inadvertence, it should be noted, does not rise to a level of deliberate indifference sufficient to support liability for failure to intervene. *See, e.g., Schultz v. Amick,* 955 F.Supp. 1087, 1096 (N.D.Iowa 1997) (noting that "liability in a § 1983 'excessive force' action cannot be founded on mere negligence") (citing, *inter alia, Daniels v. Williams,* 474 U.S. 327, 335–36, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986)).

## C. *False Misbehavior Report Claims*

Plaintiff's third amended complaint alleges two instances of having received false misbehavior reports, one issued in July 2008 by defendant J. Bruner, and the other on November 20, 2008 by Corrections Officer Pomainville. Defendants assert these claims do not give rise to a cognizable constitutional claim.

It is well-established, as defendants argue, that standing alone the mere allegation that a false misbehavior report has been filed against an inmate does not implicate constitutional conduct.[12] *Boddie v. Schnieder,* 105 F.3d 857, 862 (2d Cir.1997); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988)). Accordingly, I recommend that plaintiff's false misbehavior reports

against defendants Corrections Officers J. Bruner and Pomainville be dismissed.

12    The further assertion that the false misbehavior report has been prompted by retaliatory animus and relates to an inmate having engaged in protected activity can suffice to state a claim for retaliation. *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988). In this instance, however, plaintiff's complaint, even when read with the utmost lenity, fails to advance such a claim.

### D. *Plaintiff's Claims of Verbal Harassment and Abuse*

**\*7** Defendants next seek dismissal of plaintiff's claims of verbal abuse. In support of that request defendants assert that even if they are accepted as true, the allegations contained within plaintiff's complaint regarding verbal abuse by defendants Bruner, Russell, Taylor, and Williams do not rise to a level of constitutional significance.

42 U.S.C. § 1983 represents a vehicle by which a plaintiff may seek redress for civil rights violations committed under color of state law; it does not impose upon federal, state, and local prison officials a general code of professional conduct. *Alnutt v. Cleary,* 913 F.Supp. 160, 165–66 (W.D.N.Y.1996) (citations omitted); *Williams v. United States,* No. 07 Civ. 3018, 2010 WL 963474, at \*16 (S.D.N.Y. Feb. 25, 2010), *report and recommendation adopted,* 2010 WL 963465 (Mar. 16, 2010); *see also Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Gill v. Hoadley,* 261 F.Supp.2d 113, 129 (N.D.N.Y.2003); *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N.Y.1998). Whether applying section 1983, or otherwise, federal courts are neither equipped nor in the business of overseeing prison operations and performing human resource functions within such settings; rather, the role of a court in a case such as this is to safeguard the constitutional rights of the inmate plaintiff, in this instance his right to be free of cruel and unusual punishment running afoul to the Eighth Amendment. *Estelle,* 429 U.S. at 102, 97 S.Ct. at 291. Mere allegations of verbal abuse do not rise to a level of constitutional violation and are not cognizable under 42 U.S.C. § 1983. *See Moncrieffe v. Witbeck,* No. 97–CV–253, 2000 WL 949457, at \*3 (N.D.N.Y. June 29, 2000) (Mordue, J.) (allegations that corrections officer laughed at inmate not actionable under section 1983) (citation omitted); *Carpio v. Walker,* No. Civ.A.95CV1502, 1997 WL 642543,

at \*6 (N.D.N.Y. Oct.15, 1997) (Pooler, J. & DiBianco, M.J.) ("verbal harassment alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not rise to the level of an Eighth Amendment violation"). Nor do threats amount to a constitutional violation. *Malsh v. Austin,* 901 F.Supp. 757, 763 (S.D.N.Y.1995).

Plaintiff's claims against defendant J. Bruner, Russell, and J. Taylor arising from alleged verbal abuse and threats by those officers toward DePonceau are therefore subject to dismissal.

### E. *Plaintiff's Claim Against Corrections Lieutenant J. Smith*

In his complaint plaintiff alleges that Corrections Lieutenant Smith "cover [ed] up a racial hate of Sergeant Leduca" and his assault of plaintiff occurring on September 13, 2008. Third Amended Complaint (Dkt. No. 24) p. 1. Interpreting this claim as asserting a cause of action for conspiracy, defendants seek its dismissal as legally deficient.

A claim that a prison employee has taken steps to conceal evidence of a past constitutional violation which is not ongoing does not alone state a cognizable constitutional claim under 42 U.S.C. § 1983. *See Clayton v. City of Poughkeepsie,* No. 06 Civ. 4881, 2007 WL 2154196, at \*5 (S.D.N.Y. Jun. 21, 2007) (dismissing conspiracy claim where "[p]laintiff's only reference to the purported conspiracy in the Complaint indicates that *after* the [alleged constitutional violations] the Officer Defendants 'subsequently conspired to conceal the truth as to the circumstances of the incident.' "). (emphasis in original). Accordingly, any claim arising from the mere fact of concealment fails to state a cognizable claim. *See id.*

**\*8** In the event that the plaintiff's claim against defendant Smith is property construed as alleging a conspiracy cause of action, as defendants suggest, it is nonetheless equally deficient and cannot withstand a motion brought under Rule 12(b)(6). To sustain a conspiracy claim under § 42 U.S.C.1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights ... secured by the Constitution or the federal courts." *Malsh,* 901 F.Supp. at 763(citations and internal quotation marks omitted). Conclusory, vague, or general allegations of a conspiracy to deprive a person of

constitutional rights do not state a claim for relief under section 1983. *Arar v. Ashcroft,* 585 F.3d 559, 569 (2d Cir.2009); *see also Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir.), *cert. denied,* 464 U.S. 857, 104 S.Ct. 177, 78 L.Ed.2d 158 (1983). Plaintiff's complaint fails to set forth the details necessary to sustain a conspiracy claim and show both the existence of an agreement and a meeting of the minds; it likewise fails to provide at least some detail as to the time, place, and alleged effect of the conspiracy. *Clayton,* 2007 WL 2154196, at *5 (quoting *Jessamy v. City of New Rochelle,* 292 F.Supp.2d 498, 513 (S.D.N.Y.2003) (other citations omitted), instead merely stating plaintiff's claim in conclusory fashion. I therefore recommend dismissal of plaintiff's claims against Corrections Lieutenant J. Smith.

### F. *Plaintiff's Package Withholding Claim*

In their motion defendants next challenge the legal sufficiency of plaintiff's claim that on one isolated occasion an incoming package was wrongfully withheld from him by Corrections Sergeant Reynolds as well as other unknown "John Doe" and "Jane Doe" defendants.

Undeniably, prisoners have a recognized First Amendment right to the free flow of incoming and outgoing mail.[13] *Davis,* 320 F.3d at 351; *Minigan v. Irvin,* 977 F.Supp. 607, 609 (W.D.N.Y.1997). The mere allegation of a single isolated instance of mail tampering, however, in and of itself is insufficient to assert a plausible First Amendment violation. *See Davis,* 320 F.3d at 351; *see also Morgan v. Montanye,* 516 F.2d 1367, 1371 (2d Cir.1975). Plaintiff's complaint does not indicate how long his package was held, nor does not provide any other specifics. Standing alone this allegation would therefore be insufficient to support a First Amendment claim.

---

[13]     This right is not unfettered, however, but instead is subject to the right of corrections employees to lawfully examine an inmate's incoming mail in accordance with DOCCS Directive No. 4422, which generally authorizes inspections for money, printed materials, photographs and contraband and has been upheld as being reasonably related to legitimate concerns for the security and order of prison facilities. *Gillard v. Rovelli,* No. 9:09–CV–0431, 2010 WL 514977, at *7 (N.D.N.Y. Aug. 30, 2010) (Peebles, M.J.), *report and recommendation adopted,* 2010 WL 5147258 (N.D.N.Y. Dec.13, 2010) (McAvoy, S.J.) (citing *Webster v. Mann,* 917 F.Supp. 185, 187 (W.D.N.Y.1996) (Directive No. 4422 held reasonably

related to legitimate penological interests); *France v. Coughlin,* No. 85 Civ. 6347, 1987 WL 10724, at *2–3 (S.D.N.Y. May 4, 1987) (addressing constitutionality of DOCS Directive No. 4422); *see also Nieves v. Gonzalez,* No. 05–CV–00017S(SR), 2006 WL 758615, at * 5 (W.D.N.Y. Mar.2, 2006) (citations omitted).

It is true that plaintiff's complaint further alleges that his package was held by prison officials in retaliation for the "sergeant Leduca matters." Third Amended Complaint (Dkt. No. 24) at p. 2. When adverse action is taken by prison officials against an inmate, motivated by the inmate's exercise of a right protected under the Constitution, including the free speech provisions of the First Amendment, a cognizable retaliation claim under 42 U.S.C. § 1983 lies. *See Franco,* 854 F.2d at 588–90. As the Second Circuit has repeatedly cautioned, however, such claims are easily incanted and inmates often attribute adverse action, including the issuance of misbehavior reports, to retaliatory animus; courts must therefore approach such claims "with skepticism and particular care ." *Dawes v. Walker,* 239 F.3d 489, 491 (2d Cir.2001) (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)), *overruled on other grounds, Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Davis,* 320 F.3d at 352 (same).

**\*9** In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) a causal connection exists between the protected activity and the adverse action—in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977); *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007); *Dawes,* 239 F.3d at 492. If the plaintiff carries this burden, then to avoid liability the defendants must show by a preponderance of the evidence that they would have taken action against the plaintiff "even in the absence of the protected conduct ." *Mount Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. If taken for both proper and improper reasons, state action may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citations omitted).

As one can imagine, analysis of retaliation claims requires careful consideration of the protected activity in which the inmate plaintiff has engaged, the adverse action taken against him or her, and the evidence tending to link the two. When such claims, which are exceedingly case specific, are alleged in only conclusory fashion, and are not supported by evidence establishing the requisite nexus between the protected activity alleged and the adverse action complained of, dismissal is warranted. *Flaherty, 713 F.2d at 13.*

Although plaintiff's complaint is far from clear on this score, and the exhibits thereto provide no illumination, the court presumes that plaintiff contends he complained, either through the grievance process or in some other way, regarding the alleged assault by Sergeant Leduca. Such a complaint could constitute protected activity. *Alnutt, 913 F.Supp. at 169* (quoting *Franco* ). Plaintiff's complaint, however, is lacking in other details necessary to support a plausible retaliation cause of action. It is doubtful that a single isolated instance of package withholding of unknown duration, without more, could chill a person of ordinary firmness and therefore suffice to show adverse action sufficient to state a plausible retaliation claim. *Roseboro v. Gillespie, 791 F.Supp.2d 353, 374 (S.D.N.Y.2011)* ("Delaying delivery of an inmate's mail for a short time does not rise to the level of adverse action") (citing *Tafari v. McCarthy,* 714 F.Supp.2d at 347 ("Courts in this circuit have held that claims of mail tampering do not constitute adverse action."); *Islam v. Goord,* 05 Civ. 7502, 2006 WL 2819651 at *7 (S.D.N.Y. Sept.29, 2006)* ("Plaintiff also suggests that [a defendant's] alleged tampering with his family and legal mail was retaliatory. However, this is not the type of conduct that would deter an ordinary individual from exercising his constitutional rights. Plaintiff does not allege that he suffered any injury as a result of the alleged tampering, and therefore these isolated instances of mail tampering are not 'adverse actions' supporting a cause of action for First Amendment retaliation."); *Battice v. Phillip,* No. CV–04–669, 2006 WL 2190565 at *6 (E.D.N.Y. Aug. 2, 2006)* (Defendant's "failure to deliver [plaintiff's] mail on one occasion does not constitute the type of conduct that would deter an ordinary individual from exercising his constitutional rights. [Plaintiff] does not allege, much less present any evidence to show, that he suffered any injury as a result of the minor delay in receiving one piece of mail. Even if intentional, this isolated incident is 'simply de

minimis and therefore outside the ambit of constitutional protection.' ").

**\*10** Moreover, even assuming that the plaintiff could establish the existence of constitutionally significant adverse action, he has failed to allege any facts, either through temporal proximity or otherwise, that would satisfy the third essential element and demonstrate the requisite connection between the protected activity and the alleged adverse action. *Dillon, 497 F.3d at 251.* Even if properly regarded as a First Amendment retaliation claim, plaintiff's mail tampering claim is therefore nonetheless insufficiently stated and subject to dismissal.

For these reasons, I recommend dismissal of all claims set forth in plaintiff's third amended complaint against defendant Reynolds as well as the Jane and John Doe defendants, based upon mail tampering.

### G. *Plaintiff's Procedural Due Process Claim*

Plaintiff's complaint alleges that Lieutenant C. Goodman conducted a "one sided" Tier III disciplinary hearing. Third Amended Complaint (Dkt. No. 24) p. 1. This allegation could be viewed as alleging a deprivation of procedural due process. Although defendants' motion does not specifically address this claim the court has the power *sua sponte* to address each cause of action for frivolity, if appropriate. *Gianello v. Port of Authority of N. Y. and N.J.,* No 11 Civ. 3829, 2011 WL 2436674, at *1* (citing *Fitzgerald v. First E. Seventh Street Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir.2000)).

To successfully state a claim under 42 U.S.C. § 1983 for the denial of procedural due process arising out of a disciplinary hearing, a plaintiff must show that he or she 1) possessed an actual liberty interest, and 2) was deprived of that interest without being afforded sufficient process. *See Tellier v. Fields,* 280 F.3d 69, 79–80 (2d Cir.2000) (citations omitted); *Hynes,* 143 F.3d at 658; *Bedoya v. Coughlin,* 91 F.3d 349, 351–52 (2d Cir.1996). Not every sanction imposed upon a prison inmate as a result of a disciplinary hearing represents constitutionally significant liberty interest deprivation. Plaintiff's complaint fails to set forth any facts which would enable the court to gauge whether, as a result of the Tier III hearing, he was subjected to a penalty which could properly be viewed as a deprivation of the liberty interest.

Plaintiff's complaint is also lacking in details as to the manner in which he was denied due process in connection with that alleged liberty interest deprivation. The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell,* 418 U.S. 539, 564–67, 94 S.Ct. 2963, 2978–80, 41 L.Ed.2d 935 (1974). Under *Wolff,* the constitutionally mandated due process requirements, include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff,* 418 U.S. at 564–67, 94 S.Ct. at 2978–80; *see also Eng v. Coughlin,* 858 F.2d 889, 897–98 (2d Cir.1988). In order to pass muster under the Fourteenth Amendment, hearing officer's disciplinary determination must garner the support of at least "some evidence". *Superintendent v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

**\*11** In this instance, plaintiff's complaint fails to set forth sufficient allegations to plausibly demonstrate that he did not receive due process, even if he can show the deprivation of a liberty interest. The allegation of a "one-sided" hearing appears to potentially call into question whether defendant Goodman, as the hearing officer, was biased. Plainly, due process requires that any hearing conducted in association with the deprivation of a liberty interest must be presided over by a person who is unbiased. *Francis v. Coughlin,* 891 F.2d 43, 48 (2d Cir.1989) (citing *Bolden v. Alston,* 810 F.2d 535, 358 (2d Cir.), *cert. denied,* 848 U.S. 896, 108 S. C.t 229 (1987)). Here, there are no clarifying allegations in plaintiff's complaint to support a plausible claim of bias on the part of defendant Goodman. Because plaintiff's complaint is devoid of factual allegations that could support a finding that he was deprived of a liberty interest as a result of the Tier III disciplinary hearing in question and that defendant Goodman, the assigned hearing officer, was biased, aside from plaintiff's conclusory accusation to that effect, I recommend dismissal of any potential due process claim contained within plaintiff's complaint.

H. *Eleventh Amendment*

It is unclear from plaintiff's amended complaint whether the defendants named are sued only as individuals, or instead in their official capacities as well. [14] To the extent they may be named in their official capacities, defendants seek dismissal of such claims under the Eleventh Amendment.

[14]   It appears from his response papers that plaintiff may have intended to name the defendants in their individual capacities only, and not as state officials. *See* Plaintiff's Motion Opposition (Dkt. No. 56–4) at p. 1 of 14.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought. *Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 3057–58, 57 L.Ed.2d 1114 (1978). This absolute immunity which states enjoy under the Eleventh Amendment extends both to state agencies, and in favor of state officials sued for damages in their official capacities when the essence of the claim involved seeks recovery from the state as the real party in interest. [15] *Richards v. State of New York Appellate Division, Second Dep't,* 597 F.Supp. 689, 691 (E.D.N.Y.1984) (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89–91, 102 S.Ct. 2325, 2328–29, 72 L.Ed.2d 694 (1982)). To the extent that a state official is sued for damages in his or her official capacity the official is entitled to invoke the Eleventh Amendment immunity belonging to the state. [16] *Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985); *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991).

[15]   In a broader sense, this portion of defendants' motion implicates the sovereign immunity enjoyed by the State. As the Supreme Court has reaffirmed, the sovereign immunity enjoyed by the states is deeply rooted, having been recognized in this country even prior to ratification of the Constitution, and is neither dependent upon nor defined by the Eleventh Amendment. *Northern Ins. Co. of New York v. Chatham County,* 547 U.S. 189, 193, 126 S.Ct. 1689, 1693, 164 L.Ed.2d 367 (2006).

[16]   By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983. *See Hafer,* 502 U.S. at 30–31, 112 S.Ct. at 364–65.

Since plaintiff's damage claims, to the extent they may be asserted against the named defendants in their official capacities, are in reality claims against the State of New York, thus exemplifying those against which the Eleventh Amendment protects, they are subject to dismissal. *Daisernia v. State of New York,* 582 F.Supp. 792, 798–99 (N.D.N.Y.1984) (McCurn, J.). I therefore recommend this portion of defendants' motion be granted, and that plaintiff's damage claims against the defendants in their capacities as state officials be dismissed.

I. *Qualified Immunity*

**\*12** As an alternative basis for dismissing plaintiff's claims, defendants assert their entitlement to qualified immunity from suit. Qualified immunity shields government officials performing discretionary functions from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). "In assessing an officer's eligibility for the shield, 'the appropriate question is the objective inquiry whether a reasonable officer could have believed that [his or her actions were] lawful, in light of clearly established law and the information the officer [ ] possessed.'" *Kelsey v. County of Schoharie,* 567 F.3d 54, 61 (2d Cir.2009) (quoting *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). The law of qualified immunity seeks to strike a balance between the need to hold government officials accountable for irresponsible conduct and the need to protect them from "harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009).

In *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court "mandated a two-step sequence for resolving government official's qualified immunity claims." *Pearson,* 555 U.S. at 232, 129 S.Ct. at 815–16. The first step requires the court to consider whether, taken in the light most favorable to the party asserting immunity, the facts alleged show that the conduct at issue violated a constitutional right,[17] *Kelsey,* 567 F.3d at 61, with "the second step being whether the right is clearly established", *Okin v. Village of Cornwall–On–Hudson Police Dept.,* 577 F.3d 415, 430 n. 9 (citing *Saucier* ).[18] Expressly recognizing that the purpose of the

qualified immunity doctrine is to ensure that insubstantial claims are resolved prior to discovery, the Supreme Court recently retreated from the prior *Saucier* two-step mandate, concluding in *Pearson* that because "[t]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case", those decision makers "should be permitted to exercise their sound discretion in deciding which of the ... prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand."[19] *Pearson,* 555 U.S. at 236, 242, 129 S.Ct. at 818, 821. In other words, as recently emphasized by the Second Circuit, the courts "are no longer *required* to make a 'threshold inquiry' as to the violation of a constitutional right in a qualified immunity context, but we are free to do so." *Kelsey,* 567 F.3d at 61 (citing *Pearson,* 129 S.Ct. at 821) (emphasis in original).

17    In making the threshold inquiry, "[i]f no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151, 150 L.Ed.2d 272.

18    In *Okin,* the Second Circuit clarified that the " 'objectively reasonable' inquiry is part of the 'clearly established' inquiry", also noting that "once a court has found that the law was clearly established at the time of the challenged conduct and for the particular context in which it occurred, it is no defense for the [government] officer who violated the clearly established law to respond that he held an objectively reasonable belief that his conduct was lawful." *Okin,* 577 F.3d at 433, n. 11 (citation omitted).

19    Indeed, because qualified immunity is "an immunity from suit rather than a mere defense to liability ...", *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court has "repeatedly ... stressed the importance of resolving immunity questions at the earliest possible stage in the litigation." *Pearson,* 555 U.S. at 231, 129 S.Ct. at 815 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 524, 116 L.Ed.2d 589, —— (1991) (per curiam)).

For courts engaging in a qualified immunity analysis, "the question after *Pearson* is 'which of the two prongs ... should be addressed in light of the circumstances in the particular case at hand.' " *Okin,* 577 F.3d 430 n. 9 (quoting *Pearson* ). "The [*Saucier* two-step] inquiry is said to be

appropriate in those cases where 'discussion of why the relevant facts do not violate clearly established law may make it apparent that in fact the relevant facts do not make out a constitutional violation at all .' " *Kelsey,* 567 F.3d at 61 (quoting *Pearson,* 129 S.Ct. at 818).

**\*13** The causes of action which will remain in this action, should this report be adopted, are limited to claims of excessive force and failure to intervene. The right of a prison inmate to be free from the use of excessive force, and to be protected from such use of excessive force by prison officials, were well-established long before the relevant acts in this case. The question of whether defendants Leduca, D. Williams, and D. Murray acted with a reasonable belief of the lawfulness of their actions is inextricably intertwined with the merits of plaintiff's claims, and thus those claims are not well-suited for disposition on the basis of qualified immunity at this early procedural juncture. Accordingly, I recommend that defendants' request for a finding of qualified immunity be denied, without prejudice.

### J. *Defendants' Motion for a Stay of Discovery*

Defendants also move order pursuant to Federal Rule of Civil Procedure 26(c)(1) for a protective order staying discovery pending the resolution of defendants' motion to dismiss. Rule 26(c)(1) of the Federal Rules of Civil Procedure provides, in relevant part, that

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending ... The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery.

Fed.R.Civ.P. 26(c)(1); *see also, Spencer Trask Software and Information Services, LLC v. RPost Intern. Ltd.,* 206 F.R.D. 367, 368 (S.D.N.Y.2002) (granting stay of discovery pending determination of motion to dismiss where court found defendants presented "substantial arguments" for dismissal of many if not all of the claims in the lawsuit); *United States v. County of Nassau,* 188 F.R.D. 187, 188–89 (E.D.N.Y.1999) (granting stay of

discovery during the pendency of a motion to dismiss where the "interests of fairness, economy and efficiency ... favor[ed] the issuance of a stay of discovery," and where the plaintiff failed to claim prejudice in the event of a stay.).

In light of my recommendation that the court dismiss the majority of plaintiff's claims, one which if adopted would significantly narrow the claims and defenses to be addressed in discovery, I find the existence of good cause to issue an order protecting the defendants from the burden of engaging in discovery until after the court determines whether to adopt my recommendation, issue is thereafter properly joined by defendants' filing of an answer, and the court has issued its standard Rule 16 pretrial scheduling order in the action.

### K. *Plaintiff's Motions*

As was previously noted, plaintiff has filed various motions in this case, though the relief sought in those applications is for the most part puzzling. *See* Dkt. Nos. 60, 61, 62, 66. The title of the first motion suggests that it is addressed exclusively to the length of documents, purportedly requesting permission to file oversized documents in opposition to defendants' motion. Dkt. No. 60. The body of the motion, however, though exceedingly difficult to decipher, appears to request a stay of the action. *Id.*

**\*14** To the extent that plaintiff is requesting permission to file oversized documents, that request is denied as moot since none of the documents submitted to date appear to exceed the limits imposed under the court's local rules. The intertwined request for a stay of the action is addressed to the sound discretion of the court. *Curtis v. Citibank, N.A.,* 226 F.3d 133, 138 (2d Cir.2000) (citation omitted). With regard to this request plaintiff has not provided the court with any basis for his application. The court notes, however, that this case has been pending for over two and one-half years, and yet remains in its procedural infancy. While it is presumably the plaintiff who has the greater interest in expediting the proceedings and pursuing his claims to resolution, defendants also have a right to have the claims against them heard and decided in an efficient and expeditious basis, and the court has the independent duty of insuring that it dispenses justice not only fairly, but in addition efficiently and economically. *Fried v. Lehman Bros. Real Estate Associates III, L.P.,* No. 11 Civ. 4141(BSJ), 2012 WL 252139, at \* 5 (S.D.N.Y.

Jan.25, 2012) (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936); *Curtis,* 226 F.3d at 138. In light of these considerations and the length of time that this case has been pending, I will deny plaintiff's request for the issuance of a stay of this action.

Plaintiff's second motion, which is equally indecipherable, appears to contain both a request for permission to amend or supplement his complaint, and to seek the scheduling of a Rule 16 pretrial conference and permission to engage in discovery in the action. Dkt. No. 61. To the extent that plaintiff's motion may be construed as seeking leave to amend or supplement, the motion is rejected based upon plaintiff's failure to comply with the provision of this court's local rules requiring that such a motion be accompanied by a proposed amended pleading to supplant and supersede the existing pleading.[20] *See* N.D.N.Y.L.R. 7.1(a)(4). Plaintiff's motion for the scheduling a pretrial conference and permission to engage in discovery is denied as premature. Issue has not yet been joined in the case by the filing of answers on behalf of the defendants. Once that occurs, the court will issue a standard Rule 16 pretrial scheduling order, which will require both sides to make certain disclosures, and the parties will thereafter be permitted to engage in whatever other pretrial discovery is authorized by rule and deemed necessary.

[20]  Though this is far from clear, it appears that plaintiff may also be requesting that the United States be added as a party to the action, and that the caption be amended to reflect this fact. Dkt. No. 61. In addition to being procedurally defective as failing to meet the court's requirements, as noted above, based upon the existing complaint there does not appear to be any basis upon which to conclude that the United States bears responsibility for the civil rights violations claimed.

Plaintiff's third motion similarly appears to seek permission to amend and/or supplement his complaint. Dkt. No. 62. For the same reasons set forth above, that motion is rejected as not in compliance with the court's local rules.

Plaintiff's last and final motion, filed on April 21, 2011 —after his response to defendants' dismissal motion was submitted—appears to seek an extension of the time to oppose defendants' motion. Dkt. No. 56. Because he has in fact opposed defendants' pending motion, plaintiff's

recent application for an extension of time to submit opposition will be denied as moot.

*L. Whether to Grant Plaintiff's Leave to Amend*

**\*15**  The last issue to be addressed is whether to permit plaintiff leave to amend his third amended complaint in order to cure the deficiencies noted in this report. Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once if there is any indication that a valid claim might be stated. *Branum v. Clark,* 927 F.2d 698, 704– 05 (2d Cir.1991) (emphasis added); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"); *see also Mathon v. Marine Midland Bank, N.A.,* 875 F.Supp. 986, 1003 (E.D.N.Y.1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief). The court must now determine whether plaintiff is entitled to the benefit of this general rule, given the procedural history of the case and its pendency since May of 2009.

A court is not required to offer a plaintiff an opportunity to amend where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (finding that repleading would be futile) (citation omitted); *see also Cortec Indus. Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ( "Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted); *cf. Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 796 (2d Cir.1999) (granting leave to amend is appropriate "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim."). Many of the deficiencies noted in this report are substantive in nature, and it appears unlikely that even if afforded the opportunity to amend the plaintiff would be able to cure those deficiencies.

I note, moreover, that while leave to amend is generally granted freely, particularly to *pro se* plaintiffs, the duty to indulge a *pro se* plaintiff by permitting serial amendments is not limitless, and should not be viewed as such to the detriment of the court's obligation to insure that pending cases proceed smoothly and expeditiously through the litigation process. In this instance, plaintiff

has been granted multiple opportunities to amend his complaint, in each case with the benefit of a thorough explanation regarding perceived deficiencies, yet has not fully availed himself of those chances, nor has he heeded the court's admonitions concerning the controlling pleading requirements. Accordingly I recommend that plaintiff not be afforded a further opportunity to amend so that this case may finally move forward toward resolution of the surviving claims. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (per curiam), 411 U.S. 935, 93 S.Ct. 1911, 36 L.Ed.2d 396 (1973); *see also Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) (citing *Prezzi* ).

III. *SUMMARY AND RECOMMENDATION*

 **\*16**  The task of reviewing plaintiff's various complaints in this action and addressing them for legal sufficiency has proven to be a daunting challenge. While plaintiff's initial attempts at crafting a complaint in this action resulted in hopelessly vague and indecipherable claims being asserted against an array of many individuals and entities, with guidance from the court the plaintiff has now reduced his claims to those against a handful of DOCCS employees stationed at the Great Meadow Correctional Facility.

Based upon a review of plaintiff's recent complaint, which unfortunately remains extremely vague and to a large degree hopelessly unintelligible for the purpose of gauging the sufficiency of his claims in the face of defendants' dismissal motion, I recommend dismissal of the majority of those claims, without leave to replead. In addition, I will order that discovery in this action will be stayed, and plaintiff's various pending applications for non-dispositive relief will denied, either as moot or on the merits. Based upon the foregoing it is respectfully

RECOMMENDED, that defendants' motion to dismiss (Dkt. No. 54) be GRANTED, in large part, and that all of plaintiff's claims against the defendants in this action be DISMISSED, without leave to replead, with the exception of plaintiff's claims against defendants Sergeant Leduca, Grievance Sergeant D. Williams, and Watch Commander D. Murray for the use of excessive force and/or failure to intervene growing out of the incident occurring on or about September 13, 2009; and it further

ORDERED that plaintiff's motions for leave to amend and/or supplement his complaint (Dkt.Nos.61, 62) are rejected as failing to comply with this court's local rules based upon the failure to include a proposed supplemental and/or amended complaint; and it is further

ORDERED, that pending final disposition of defendants' dismissal motion, the filing of an answer on behalf of the remaining defendants, and the issuance by the court of a standard Rule 16 pretrial scheduling order in the case, all discovery in this action be and is hereby STAYED; and it is further

ORDERED that plaintiff's motion for expansion of the page limitations set forth in this court's local rules (Dkt. No. 60) is DENIED as moot; and it is further hereby

ORDERED that plaintiff's motion for a stay of this action (Dkt.Nos.60, 61) is DENIED; and it is further hereby

ORDERED that plaintiff's application for a pretrial conference and for permission to engage in discovery in this action (Dkt. No. 61) is DENIED; and it is further

ORDERED, that plaintiff's application for an extension of time to respond to defendants' dismissal motion (Dkt. No. 66) is DENIED, as moot.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993).

 **\*17**  It is further ORDERED that the clerk of the court serve a copy of this report, recommendation and order upon the parties in accordance with this court's local rules, and that the clerk additionally forwarded to the plaintiff a copy of the docket sheet in the action.

**All Citations**

Not Reported in F.Supp.2d, 2012 WL 1030415

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

2001 WL 1029044
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dominick LAROCCO, Plaintiff,

v.

N.Y.C. DEPT. OF CORRECTIONS,
et al., Defendants.

No. 99CIV.9759SHSRLE.
|
Aug. 31, 2001.

**Attorneys and Law Firms**

Dominick LaRocco, Mid–State Correctional Facility,
Marcy, Pro se plaintiff.

Lisa J. Black, Assistant Corporation Counsel, The City of
New York, Law Department, New York, for defendant.

REPORT AND RECOMMENDATION

ELLIS, Magistrate J.

I. INTRODUCTION

**\*1** *Pro se* plaintiff Dominick LaRocco ("LaRocco"),
presently incarcerated at Clinton Correctional Facility,
brings this action against the New York City Department
of Corrections ("DOCS") and Correction Officer Pitt
("Pitt"). On September 16, 1999, [1] LaRocco filed a
complaint against DOCS pursuant to 42 U.S.C. § 1983
alleging sexual harassment, verbal abuse, and assault.
That day, then-Chief Judge Thomas P. Griesa issued a
sixty-day order stating that LaRocco could not maintain
an action under 42 U.S.C. § 1983 against DOCS and
directing him to file an amended complaint naming as
defendants the correction officers involved in the incident.
Order at 3. [2] On October 6, 1999, LaRocco filed an
amended complaint alleging the same violations and
naming Correction Officer Pitt as a defendant.

[1]      While the complaint was officially filed on September
         16, 1999, it was received by this Court's Pro Se Office
         on January 14, 1999.

[2]      "Order" refers to Griesa's order of September 16,
         1999.

On September 29, 2000, District Judge Stein referred
this case to the undersigned for general pretrial matters
as well as the resolution of dispositive motions. On
January 8, 2001, defendant filed a motion to dismiss
the amended complaint pursuant to Rule 12(b)(6) of the
Federal Rules of Civil Procedure. On April 16, 2001,
and again on April 30, 2001, LaRocco made applications
to the Court requesting counsel. For the reasons stated
below LaRocco's applications for counsel are DENIED.
I also recommend that the defendant's motion to dismiss
LaRocco's complaint under Rule 12(b)(6) be GRANTED.

II. BACKGROUND

While an inmate at Rikers Island, LaRocco was allegedly
the victim of sexual harassment, assault, and verbal
threats by Pitt. Am. Compl. ¶ 1. [3] LaRocco alleges that
these acts took place on May 31, 1997; July 27, 1997; and
September 12, 1997, while Pitt was conducting a visual
strip search of Larocco following a contact visit. *Id.* "On
three separate occasions after my visit was over ... in the
strip search room, next to the visiting room in Building
N.I.C. Rikers Island ... 'Officer Pitt', sexualy[sic] harassed
me, assaulted me by throwing me up against the wall and
ripping my jumpsuit half way off of me, held his body
up against me calling me a bitch and threatening me, and
threatened to sexually assault me the next time if I ever
told any one ..." *Id.*

[3]      "Am. Compl." refers to the amended complaint filed
         in this action.

Specifically, LaRocco claims that Pitt told him "I think
you have something up your ass, hold your ass and
spread it. Officer Pitt, then told plaintiff, I think your[sic]
hideing[sic] something under your nuts, lift your nuts
and hold them, then lift your dick and hold it." *Id.* ¶
4. Pitt would allegedly force LaRocco to "go through
his despicable routine back and forth about 3 times." *Id.*
LaRocco asked Pitt to stop, but Pitt told him to " 'shut
the fuck up or you will need Jesus Christ.' ' *Id.* ¶ 5. After
the first two visits at issue, when LaRocco informed Pitt
that he would complain, Pitt responded by telling him that
he would beat him up if he complained. *Id.* ¶ 6. After
the September 12, 1997 visit, Pitt asked LaRocco to go
into another room where he "grabbed the plaintiff by his

jumpsuit, throw's[sic] plaintiff,[sic] up against the wall, riped[sic] plaintiff's jumpsuit half way off plaintiff's body and held his body up against the plaintiff's body." *Id.* ¶ 8. At some point, another officer named Dunes entered the room, took Pitt's keys, and exited. *Id.* ¶ 9.

**\*2** After the September 12th incident, LaRocco allegedly complained to another officer named Rand. *Id.* ¶ 13. LaRocco also informed an unidentified captain of what Pitt had done. *Id.* ¶ 14. The unidentified captain responded by telling LaRocco that while the events he had described did not constitute assault, he would nonetheless speak to Pitt. *Id.* LaRocco admits that he did not tell Rand or the unidentified captain everything Pitt had said and done to him for fear of repercussions. *Id.* ¶ 15. On August 5, 1997, while in the Queens County Courthouse Part K–20, LaRocco informed Judge Finnegan of the acts Pitt had committed against him, but nothing was done. *Id.* ¶ 17. LaRocco then made several written complaints to a probation officer at the Queens County Courthouse, Prisoner's Legal Services, two attorneys, the State Commission of Corrections, the FBI, the warden of Rikers Island Correctional Department, and the Inspector General. *Id.* ¶¶ 18, 19, 21, 22, 24, 25, 27, 28. It is not clear from the record what came of these complaints.

LaRocco alleges an Eighth Amendment claim because he "went through very cruel and unusual punishment ... [and] "it was very 'embarrassing' and 'humiliating' experience. Officer Pitt's conduct was 'despicable', 'inexcusable', and 'illegal.' " *Id.* ¶ 29. LaRocco states that "under the [Eighth] Amendment prisoners are [entitled] to protection from ... the state. N.Y.S. City's[sic] employees failed to protect plaintiff, but instead [inflicted] assault and threatened to sexually assault plaintiff intentionally." *Id.* ¶ 31.

## III. DISCUSSION

### A. Applications For Counsel

The Court of Appeals for the Second Circuit has articulated the factors that a court should consider in deciding whether to appoint counsel for an indigent civil litigant under 28 U.S.C. § 1915(d). In making this determination, the court "exercises substantial discretion, subject to the requirement that it be guided by sound legal principle." *Cooper v. A. Sargenti Co.,* 877 F.2d 170, 172 (2d Cir.1989) (citing *Jenkins v. Chemical Bank,* 721 F.2d 876, 879 (2d Cir.1983)).

The court must first ask whether plaintiff can afford to obtain counsel. *See Terminate Control Corp. v. Horowitz,* 28 F.3d 1335, 1341 (2d Cir.1994). If the court finds that a plaintiff cannot afford counsel, it must then examine the merits of the case and determine whether the indigent's position "seems likely to be of substance." *Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986). Once the initial determinations have been made as to indigence and merit, the court has discretion to consider the following factors: "the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why the appointment of counsel would be more likely to lead to a just determination." *Id.* at 61–62.

**\*3** Here, LaRocco made an application to proceed *in forma pauperis* but it is unclear from the record whether that permission was ever granted. Notwithstanding that uncertainty, the Court will address the merits of LaRocco's claims. He alleges sexual harassment, verbal abuse, and assault. As detailed below, the Court finds LaRocco's claims meritless and as a result, denies his applications for counsel.

### B. Standard of review for dismissal under 12(b)(6)

A motion to dismiss under Rule 12(b)(6) should be granted only if it appears beyond doubt that "no relief could be granted under any set of facts that could be proved consistent with the allegations." *H.J., Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 249–50 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). In a motion for judgment on the pleadings, the well-pleaded allegations of fact by the nonmoving party must be accepted as true and construed in the light most favorable to that party. *See, e.g., Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994) (citing *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989); *Nat'l Ass'n of Pharm. Mfr., Inc. v. Ayerst Lab.,* 850 F.2d 904, 909 n. 2 (2d Cir.1988) (treating motion for judgment on the pleadings as if it were a motion to dismiss).

A court should draw all reasonable inferences in favor of the plaintiff, and should not dismiss the complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Davis v. Monroe County Bd. of Educ.,* 119 S.Ct.

1661, 1676 (1999) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)); *see also Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994). However, a court does not have to accept as true "conclusions of law or unwarranted deductions of fact." *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994), *cert. denied,* 513 U.S. 1079 (1995) (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.08, at 2266–69 (2d ed.1984)).

C. LaRooco's Claims

1. Section 1983 Claim for Illegal Searches

Strip searches conducted in a reasonable manner after contact visits are not unconstitutional. *Bell v. Wolfish,* 441 U.S. 520, 560 (1979). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559. Moreover, "visual body-cavity searches are permitted if reasonably related to a significant and legitimate penological goal and conducted in a reasonable manner." *Troy v. Kuhlman,* 1999 U.S. Dist. LEXIS 16027, *26 (S.D.N.Y.1999).

 **\*4** Pitt cites *Covino v. Patrissi,* 967 F.2d 73 (2d Cir.1992), as support for his assertion that strip searches conducted to further penological interests are not unconstitutional. Def. Mem. at 7. In *Covino,* the plaintiff, a detainee at a correctional facility in Vermont, challenged as unconstitutional that institution's practice of conducting random visual body-cavity searches of inmates. *Id.* at 74. The court upheld the practice stating that it was reasonable in balancing the concerns of inmates' privacy with concerns for security. *Id.* at 80. The court, however, made a point to distinguish *Covino* from *Hurley v. Ward,* 584 F.2d 609 (2d Cir.1978), where a preliminary injunction prohibiting visual anal and genital searches was affirmed not because the searches themselves were unconstitutional but rather because they were accompanied by physical and verbal abuse. *Covino,* 967 F.2d at 80.

While, there may exist legitimate security concerns to justify Pitt's asking LaRocco to hold his genitalia and

spread his buttocks, it is unlikely that such concerns would warrant this type of behavior occurring three times after a particular visit. In addition, in light of *Hurley,* there exists no justification for the verbal abuse and threats that were part of the searches. However, as discussed below, these incidents do not rise to level of a constitutional violation.

2. Eighth Amendment Sexual Abuse/Harassment Claim

A prisoner's allegations of sexual abuse by a corrections officer may state an Eighth Amendment claim under 42 U.S.C. § 1983. *Boddie v. Schneider,* 105 F.3d 857, 860 (2d Cir.1997). The Second Circuit has held that "severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively, sufficiently serious' enough to constitute an Eighth Amendment violation." *Boddie,* 105 F.3d at 861 (2d Cir.1997). "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is 'simply not part of the penalty that criminal offenders pay for their offenses against society.' ' *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994).) In *Boddie,* the court found that the plaintiff had not stated an Eighth Amendment claim under § 1983 because he had only asserted a few incidents where he had been "verbally harassed, touched, and pressed against without his consent." *Id.* None of these incidents was severe enough to be " 'objectively, sufficiently serious." ' *Id.* Taken together these incidents were not sufficiently egregious in the harm inflicted. *Id.*

In *Boddie,* the plaintiff's complaints included being the subject of a pass made at him by a female corrections officer, having his hand squeezed and his penis touched, and having the female corrections officer press her breasts against his chest and her vagina against his penis. *Id.* at 859–60. In *Montero v. Cruise,* 2001 WL 727020, *4 (S.D.N.Y.2001),* the court found that an inmates' allegations that an officer squeezed his genitalia during pat-frisks did not support an Eighth Amendment claim.

 **\*5** According to the complaint, on September 12, 1997, Pitt threw LaRocco against a wall, ripped Larocco's jumpsuit and pressed his body against LaRocco's. Am Compl. ¶ 1. Pitt allegedly verbally harassed and threatened LaRocco with physical violence if he complained. *Id.* ¶ 6. Additionally, Pitt allegedly forced LaRocco to undergo a routine where he had to lift his penis and spread his buttocks about three times. *Id.* ¶ 4. LaRocco does not allege that Pitt fondled him or touched him in a sexual manner. These incidents are not severe enough

to be considered "objectively, sufficiently serious." While "despicable," if true, they do not "involve a harm of federal constitutional proportions." *Boddie,* 105 F.3d at 861.

### 3. Claim of Verbal Threats

Verbal threats alone are not actionable under 42 U.S.C. § 1983. *Harris v. Lord,* 957 F.Supp. 471, 475 (S.D.N.Y.1997) (*quoting Jermosen v. Coughlin,* 878 F.Supp. 444, 449 (N.D.N.Y.1995) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.") Moreover, a verbal threat not accompanied by physical injury "does not constitute the violation of any federally protected right." *Shabazz v. Pico,* 994 F.Supp. 460, 474 (S.D.N .Y.1998) (holding that "verbal harassment or profanity alone, 'unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem,' does not violate any federally protected right and therefore is not actionable under 42 U.S.C. § 1983.")

LaRocco alleges that Pitt called him a "bitch," threatened to beat him up and "shove something up [his] ass," and told him to "shut the fuck up." Am. Compl. ¶¶ 1, 5, 6, 8, 11. LaRooco alleges that Pitt's verbal threats caused him fear. He does not, however, allege that these threats were followed by any physical injury and as a result, they are not actionable.

### 4. Eighth Amendment Excessive Force Claim

The Eighth Amendment's prohibition against cruel and unusual punishment protects individuals convicted of crimes from the use of official force. *Hudson v. McMillan,* 503 U.S. 1, 5 (1992); *Whitley v. Albers,* 475 U.S. 312, 319 (1986). To demonstrate a constitutional violation under the Eighth Amendment, Larocco must satisfy the objective component which requires that the alleged violation be "sufficiently serious" by objective standards. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) (*quoting Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). The subjective component is met if the plaintiff demonstrates that the officers involved in the alleged incident had a wanton state of mind at the time. *Id.*

The issue in claims of excessive force brought pursuant to the Eighth Amendment is " 'whether force was applied in a good faith effort to maintain or restore

discipline, or maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320–21 (*quoting Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973). "Under the *Whitley* approach, the extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." ' *Hudson,* 503 U.S. at 7 (*quoting Whitley,* 475 U.S. at 321). Additionally, a court must consider the need for the force, the relationship between that need and the degree of force actually used, the reasonable perception of the threat by responsible officers, and any efforts undertaken to minimize the severity of a forceful response. *Id.* While the absence of serious injury is relevant, there are other factors to be considered. *Id.*

**\*6** The only incident involving force which LaRocco claims, occurred during the September 12, 1997 search when Pitt allegedly threw him against a wall. Am. Compl. ¶¶ 7–8.There are no factual details to aid in the evaluation of whether the force was needed, how much force was needed in relation to how much force was used, whether there existed a reasonable perception of a threat, and what efforts, if any, were taken to temper the severity of the force.

Further, while physical injury is only one of the factors considered, the injury must be more than *de minimis. Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 568 (S.D.N.Y.2000) (*citing Griffin v. Crippen,* 193 F.3d 89, 92 (2d Cir.1999). The record does not show that Pitt's actions, even if malevolent, were a malicious or sadistic effort to inflict harm. *See Reid v. Coughlin,* 1994 WL 23152, \*4 (S.D.N.Y.1994) (prison guard's slamming of plaintiff against a wall, even if malevolent, was not constitutionally significant). LaRocco does not allege he suffered physical injury as a result of this incident. Moreover, the alleged violation is not "sufficiently serious" to satisfy the objective component, and no information exists to determine whether Pitt had a "wanton" state of mind at the time of the alleged incident. Accordingly, LaRocco fails to state a claim for excessive force under the Eighth Amendment.

### 5. Fourth Amendment Violation

While the Court in *Hudson v. Palmer,* 468 U.S. 517, 530 (1984), held that the "Fourth Amendment"s prohibition on unreasonable searches does not apply in prison cells," the Second Circuit has determined that inmates do retain a limited right to bodily privacy under the Fourth Amendment. *Covino v. Patrissi,* 967 F.2d 73, 78 (2d Cir.1992) (concluding that although prisoners do have limited Fourth Amendment rights, officers had sufficient interest to infringe upon such interests). Claims of excessive force made in the course of a "seizure" are analyzed under the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989). In evaluating these claims, a court must review "(1) the need for the application of force; (2) the relationship between that need and the amount of force that was used; (3) the extent of the injury inflicted; and (4) '[w]hether the force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm." ' *Id.* at 390. " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." ' *Id.* at 396 (*quoting Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033 (1973). A plaintiff need not establish that he suffered serious injury or needed medical attention, she must only show that defendant acted maliciously or sadistically. *Hudson v. McMillan,* 503 U.S. 1, 9 (1992). "That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.*

**\*7** Given the lack of details surrounding the alleged incident, it is difficult to ascertain whether force was necessary. There is no evidence that Pitt acted maliciously or sadistically nor was LaRocco physically injured. *See DeArmas v. Jaycox,* 193 WL 37501, \*4 (S.D .N.Y.1993) (malicious intent was not established where prison guard allegedly swore at plaintiff, punched and kicked him once, and injured plaintiff's right knee). Accordingly, LaRocco cannot maintain an action for violation of his Fourth Amendment rights.

## II. Qualified Immunity For Officer Pitt

Qualified immunity protects government officials from liability as a result of their performance of discretionary functions. *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995); *Soares v. State of Connecticut,* 8 F.3d 917, 922 (2d Cir.1993) (even if the force used was not objectively reasonable, qualified immunity can protect defendants if they can show that the rights plaintiff claims were violated were not clearly established); *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990) (even if force was used was excessive, officer could still benefit from qualified immunity). Furthermore, if reasonably competent police officers can disagree about the degree of the force used, defendants are still immune. *Lennon,* 66 F.3d at 425. Here, reasonably competent officials could disagree whether the amount of force used was indeed appropriate or excessive. Further, in evaluating the absence of physical injury and other evidence, it is determined that Pitt's use of force was slight. *Warren v. Westchester County Jail,* 106 F.Supp.2d 559, 570 (S.D.N.Y.2000).

## V. CONCLUSION

For the foregoing reasons, LaRocco's motions for appointment of counsel are DENIED, and I respectfully recommend that Pitt's motion to dismiss LaRocco's complaint be GRANTED.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn,* 474 U.S. 140, 150 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989) (*per curiam* ); 28 U.S.C. § § 636(b)(1) (West Supp.1995); Fed.R.Civ.P. 72, 6(a), 6(e).

**All Citations**

Not Reported in F.Supp.2d, 2001 WL 1029044

End of Document                    © 2016 Thomson Reuters. No claim to original U.S. Government Works.

Reid v. Coughlin, Not Reported in F.Supp. (1994)

1994 WL 23152

1994 WL 23152
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Anthony REID, Plaintiff,

v.

Thomas A. COUGHLIN, III, et al., Defendant(s).

No. 86 CIV. 1351 (LAP).

|

Jan. 26, 1994.

*OPINION & ORDER*

PRESKA, District Judge:

**\*1** This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff alleges violation of his Eighth Amendment right against cruel and unusual punishment and seeks compensatory and punitive damages. Presently before the Court is the defendants' motion for summary judgment.

*Background*

As indicated by the docket number, this case will soon see its eighth birthday. It began on August 27, 1985, when the plaintiff, an inmate at the Green Haven Correctional Facility (where he remains incarcerated) was part of a prison disturbance involving approximately 150 inmates. At least one shot was fired by prison officials, and tear gas was released to quell the riot.

Sometime during the disturbance, the plaintiff came into possession of a correctional officer's baton. He did not strike anyone with the it, but rather withdrew from the melee and began making his way from the prison yard back to G-block, stick in hand. Soon after he entered G-block, the plaintiff encountered Corrections Officer Junge, a defendant in this action. According to the plaintiff, he had just backed into G-block, when Officer Junge came up behind him and forcibly threw him against the wall in order to relieve him of the baton. The plaintiff alleges that his face, chest, and elbows came into hard contact with the wall but admits that he received no injuries.

Officer Junge reports a slightly different version of the incident. In his affidavit supporting this motion, he testifies that the plaintiff did not back into G-block, but rather was running straight into the building, baton in hand, right at him. The Officer claims that the plaintiff stopped running directly in front of him, whereupon he seized the plaintiff by the wrist and "walked" him over to the wall.

In any event, approximately one hour later, after the plaintiff had been returned to his cell, defendant Schneider, a correctional officer, and several other officers under his control, arrived at the cell door. The officers informed him that he was being placed in the Special Housing Unit and proceeded to handcuff him and escort him to that destination.

According to the plaintiff, he was cooperative and docile throughout the journey. Nonetheless, he alleges, Officer Schneider caused the handcuffs to become abnormally tight around his wrists, causing him extreme pain. When he complained of the pain, he claims he was told by one of the other officers to "shut up," lest a stick be rammed down his throat. In addition, the plaintiff alleges, he was forced to walk the entire length of his trip with his forehead nearly touching his knees, on account of the officers holding his handcuffs high in the air behind his back. Finally, the plaintiff claims that one of the officers kicked him in the back without provocation. This whole incident is said to have left the plaintiff bruised and sore.

Officer Schneider, in his affidavit in support of this motion, admits escorting the defendant to SHU and handcuffing him, in accordance with standard prison procedure. Officer Schneider denies any suggestion that any improper force was applied to the plaintiff during their time together.

**\*2** The amended complaint alleges that the defendants' actions in the instances described above constituted wanton application of unnecessary force in violation of the plaintiff's Eighth Amendment right against cruel and unusual punishment.

*Procedural History*

Reid v. Coughlin, Not Reported in F.Supp. (1994)

1994 WL 23152

This is the third summary judgment motion brought before this Court by the defendants. The first was presented to Judge Ward in 1987 and resulted in the case being pared down to its current posture. Judge Ward dismissed a Due Process claim arising out of the post-riot hearings, which left only the Eighth Amendment claim against defendants Junge and Schneider. As to that claim, Judge Ward denied summary judgment, finding that "[i]ssues of fact remain as to whether any of the ... defendants used excessive force in restraining plaintiff either in the exercise yard or while he was being escorted to the [SHU]."

The second motion was presented to Judge Wood in 1989. The defendants argued that even under the facts alleged by the plaintiff, only reasonable force had been applied, and no permanent injury had resulted. Accordingly, the defendants said, they were entitled to judgment as a matter of law. Judge Wood denied the motion by memo endorsement dated May 31, 1989.

The present motion is very similar to the second. Once again, its basis is that the facts alleged by the plaintiff do not make out a constitutional claim. The plaintiff accurately notes that no new material facts have been discovered since Judge Wood's decision, and, ordinarily, that circumstance would lead the Court to refuse to entertain another motion. However, since Judge Wood's ruling, the Supreme Court has decided *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995 (1992), which bears on and clarifies the law applicable to this case. In light of this development, it is appropriate to reexamine the possibility that the defendants may be entitled to summary judgment.

### Discussion

#### I. Standard of Review

Pursuant to Fed.R.Civ.R. 56(c), a trial judge may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.*

In determining whether any genuine issue of material fact is presented, a court must resolve all ambiguities, and draw all reasonable inferences, against the moving party. *Walther v. Bank of New York,* 772 F.Supp. 754 (S.D.N.Y.1991). However, once the moving party has met its initial burden of demonstrating the absence of a material issue of fact "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*' " *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348 (1986) (citing *Fed.R.Civ.P. 56(e)*; emphasis supplied in original). "Hope alone will not raise a triable issue." *United National Ins. Co. v. The Tunnel, Inc.,* 998 F.2d 351, 355 (2d Cir.1993), *quoting, Bachrach v. Farbenfabriken Bayer AG,* 366 N.Y.S.2d 412, 413 (N.Y.1975).

#### II. The Eighth Amendment Claims

**\*3** The plaintiff claims that defendants Junge and Schneider each violated his Eighth Amendment right against cruel and unusual punishment by applying excessive force during their respective encounters with him. Such a claim is clearly cognizable under the Eighth Amendment, which prohibits the "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (1986).

As the Supreme Court explained in *Hudson,* "[w]hat is necessary to establish an 'unnecessary and wanton infliction of pain,' ... varies according to the nature of the alleged constitutional violation." 112 S.Ct. at 998 (citing *Whitley,* 475 U.S. at 319). Where prison officials stand accused of using excessive physical force, as was the case in *Hudson* and is the case here, the Supreme Court held that "the core judicial inquiry is ... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 112 S.Ct. at 999. The Court further held that in instances where the latter motive is established, a plaintiff may recover even though he did not suffer serious injury. *Id.* at 1000. As Justice O'Connor explained, "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.*

Her broad pronouncement notwithstanding, Justice O'Connor was careful to caution that

Reid v. Coughlin, Not Reported in F.Supp. (1994)

1994 WL 23152

not ... every malevolent touch by a prison guard gives rise to a federal cause of action.... The Eighth Amendment's prohibition of "cruel and unusual" punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "

*Id.* (quoting *Whitley,* 475 U.S. at 327 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). *See also Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied,* 414 U.S. 1033 (1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.").

All of this applied to the facts at hand leads to the conclusion that summary judgment is proper with respect to the claim against Defendant Junge but not with respect to the claim against Defendant Schneider.

Beginning with Defendant Junge, it is clear that facts concerning the incident remain in dispute. The plaintiff, for example, says Junge grabbed him from behind, while Junge says the plaintiff ran toward him. The plaintiff says Junge slammed him against the wall; Junge says he placed the plaintiff against the wall. At this stage in the proceedings, it would be improper for the Court to decide whose contentions are correct. However, it is not necessary for the Court to do so, because, assuming the facts to be as propounded by the plaintiff, the Court finds that the force applied by Junge was *de minimis* and does not rise to the level of a constitutional violation.

**\*4** Viewing the facts in the manner most favorable to the plaintiff, he was grabbed from behind, while in possession of a baton, by a corrections officer responding to a large-scale prison riot. The officer slammed him against the wall, so as to relieve him of the baton, without injuring him in the process.

In light of the circumstances and the results, the force applied by defendant Junge can only be considered *de minimis.* The defendant was faced with an inmate carrying a lethal weapon in the midst of a riot. His response was to slam the plaintiff once against a wall and take him back to his cell. The fact that the plaintiff suffered no injury demonstrates that the defendant, a much larger man, did not act viciously or without restraint. *See Hudson,* 112

S.Ct. at 999 (the absence of serious injury, while not dispositive of an Eighth Amendment claim, is relevant to the determination of whether force used could have reasonably been thought necessary). Moreover, there is no allegation that the incident was premeditated or part of a larger plan to harass or intimidate. *See Reyes v. Koehler,* 815 F.Supp. 109, 114 (S.D.N.Y.1993) ( "Defendant's pushing plaintiff against a wall ... was a momentary act of such a limited duration as to belie any inference of malicious or sadistic intent to cause harm.") (internal quotations omitted). The bottom line is that, regardless of whether or not Junge's motive was malevolent, the actions in which that motive was manifested were legally insignificant and not "repugnant to the conscience of mankind." *Hudson,* 112 S.Ct. at 1000 (internal quotations omitted). *See also DeArmas v. Jaycox,* No. 92 Civ. 6139 (LMM), 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993). Accordingly, they cannot ground a constitutional claim, and summary judgment in favor of defendant Junge must be granted.

The same analysis applies to the claim against defendant Schneider, but with a different result. As with the claim against Officer Junge, the facts surrounding the incident with defendant Schneider are disputed. Schneider, in fact, denies substantially all of the plaintiff's version of the events. Unlike the first claim, however, the Court cannot view the facts in the manner most favorable to the plaintiff—as it must in this context—and still hold with legal certainty that Schneider's actions do not give rise to a constitutional claim. For if, as the plaintiff alleges, Schneider, or officer's under Schneider's control, kicked the plaintiff and deliberately caused his handcuffs to become painfully tight, for the sole purpose of causing him harm, such actions would not amount to a *de minimis* use of force. Rather, they would constitute the needless infliction of significant pain and would be actionable under *Hudson.* The plaintiff, therefore, states a cognizable claim, which turns on material questions of disputed fact. Consequently, summary judgment in favor of defendant Schneider must be denied. [1]

*Conclusion*

**\*5** The defendants' motion for summary judgment is GRANTED with respect to defendant Junge and DENIED with respect to defendant Schneider.

**Reid v. Coughlin, Not Reported in F.Supp. (1994)**

1994 WL 23152

The parties shall file a joint pretrial order on or before March 21, 1994 and shall appear before the Court for a final pretrial conference on April 6, 1994 at 4:30 p.m. in courtroom 129.

1    The defendants also seek summary judgment on the basis of qualified immunity. However, the availability of qualified immunity turns on whether the defendant's conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *McGauley v. Admin. of Metro. Correctional Ctr.,* No. 88 Civ. 6296, 1993 WL 183703, at *1 (S.D.N.Y. May 25, 1993). Further, as the *McGauley* court went on to state,

Whether a reasonable correction official would have believed that the defendants' [correction officers] conduct was lawful depends upon plaintiff's [inmate] conduct, defendants' conduct, and the surrounding circumstances.

1993 WL 183703 at *1. The facts underlying each of those factors are disputed in the present case. Therefore, summary judgment based on official immunity is not possible.

**All Citations**

Not Reported in F.Supp., 1994 WL 23152

---