UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON BRISMAN,

                                  Plaintiff,

v.                                                              9:15-CV-0466
                                                                 (MAD/TWD)

SERGEANT VOLPE, et al.

                                  Defendants.
_____

APPEARANCES:                                   OF COUNSEL:

JASON BRISMAN
95-A-6077
Plaintiff, *pro se*
Wende Correctional Facility
P.O. Box 1187
Alden, NY 14004

HON. ERIC T. SCHNEIDERMAN               MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York      Assistant Attorney General
Counsel for Defendants
The Capitol
Albany, NY 12224

**THÉRÈSE WILEY DANCKS, United States Magistrate Judge**

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

*Pro se* Plaintiff Jason Brisman, an inmate in the custody of the New York State

Department of Corrections and Community Supervision ("DOCCS"), has commenced this civil

rights action under 42 U.S.C. § 1983, alleging violations of his constitutional rights while

confined at Auburn Correctional Facility ("Auburn").  (Dkt. No. 1.)  On initial review by the

Hon. Mae A. D'Agostino, District Court Judge, conducted pursuant to 28 U.S.C. §§ 1915(e) and

1915A, numerous claims and defendants were dismissed.  (*See generally* Dkt. No. 9.)  Plaintiff's

Eighth Amendment excessive force and First Amendment retaliation claims against Volpe,

Travis, Reilly, Shells, Kirkwood, and Lupo survived initial review and required a response.

(Dkt. No. 9.)

     Plaintiff's excessive force claims were subsequently dismissed with leave to amend on

Defendants' partial motion to dismiss.  (Dkt. No. 42.)  By letter dated November 17, 2016,

Plaintiff advised the Court that he had elected not to file an amended complaint.  (Dkt. No. 48.)

Thus, only Plaintiff's First Amendment retaliation claims remain.

     Defendants Kirkwood and Reilly have moved for summary judgment on Plaintiff's

retaliation claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Dkt. No. 54.)

Defendants contend summary judgment is warranted because Plaintiff admitted during his

deposition that he did not know if either Kirkwood or Reilly "tackled [him] into the wall" on

June 6, 2014.  (Dkt. No. 54-5 at 4-9.[1])  Plaintiff has opposed the motion.  (Dkt. No. 57.)

     For the reasons that follow, the Court recommends that the motion of Defendants

Kirkwood and Reilly for summary judgment be denied.

## II.    BACKGROUND

     Plaintiff alleges he was assaulted on June 6, 2014, by Reilly, Kirkwood, and four

unnamed officers, in retaliation for filing a grievance against the gymnasium staff on June 4,

2014.  (Dkt. No. 1 at ¶ 47.)  Plaintiff testified regarding this incident as follows:

> A:    I was waiting on line to go in to the Gym, Defendant
> Kirkwood told me to step out the line and he told me to
> hand me -- hand him my I.D., which I did.  He read it and
> said you like writing grievances, get the F-U-C-K out of
> here.

---

[1] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

I requested to speak to the Area Supervisor.  He told me to put my hands in my pockets, they escorted me back to C Block where I was housed in.  I seen Defendant Riley there I asked if I could speak to him, he said no, get the F out of here.

I made it up the first flight of stairs to the right, about three or four officers along with Kirkwood and Riley tackled me into the wall.  I fell to the floor.  They all ran down the steps, which I had come up from.  Went and locked in my cell.

The next day I received a Misbehavior Report.  I requested from the Defendant, Jamie M. Lamana (phonetic spelling), the Dep of Security, that the audio and video footage be held of the entire incident and I'm not sure if you have it available for me, but I did request it in a timely manner.

Q:     All right. I think you said, you were tackled into the wall?

A:     Yes.

Q:     Who tackled you into the wall?

A:     Three or four officers.

Q:     Do you know who?

A:     No.

Q:     And described exactly what happened when you were tackled into the wall.

A:     I fell to the floor, covered up.

Q:     What happened at the point?

A:     Officers ran down the stairs.

(Dkt. No. 54-3 at 10-12.)  The following exchange also took place during Plaintiff's deposition:

Q:     Did Officer Kirkwood tackle you into the wall?

A:     Well, him and Defendant Reilly were behind me, so --I was tackled into the wall. I don't recall who exactly tackled me. I just fell to the ground and I covered up.

3

Q:      So, you're not sure if Officer Kirkwood tackled you into the wall?

A:      No.  I know he was behind me with Defendant Reilly, yes and about three or four officers just tackled me into the wall.

Q:      But I'm asking you about Officer Kirkwood.  You're not sure if he was one of the ones who tackled [you] into the wall?

A:      No, I'm not positive.

Q:      How about Sergeant Reilly, was he one of the officers –

A:      No, I'm not --

Q:      -- that tackled --

A:      -- positive.

Q:      -- you into the wall?

A:      No, I'm not positive.

(Dkt. No. 54-3 at 19.)

## III.    APPLICABLE SUMMARY JUDGMENT LEGAL STANDARDS

Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  The party moving for summary judgment bears the initial burden of showing, through the production of admissible evidence that no genuine issue of material fact exists.  *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Only after the moving party has met this burden is the nonmoving party required to produce evidence demonstrating that genuine issues of material fact exist. *Salahuddin*, 467 F.3d at 272-73. The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "Conclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

A party opposing summary judgment is required to submit admissible evidence. *See Spiegel v. Schulmann*, 604 F.3d 72, 81 (2d Cir. 2010) ("It is well established that in determining the appropriateness of a grant of summary judgment, [the court] . . . may rely only on admissible evidence.") (citation and internal quotation marks omitted). A plaintiff's verified complaint is to be treated as an affidavit. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("A verified complaint is to be treated as an affidavit . . . and therefore will be considered in determining whether material issues of fact exist . . . .") (citations omitted).

In *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005), the Second Circuit reminded that on summary judgment motions "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." "To defeat summary judgment, . . . nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys*, 426 F.3d at 554 (citation and internal quotation marks omitted). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (citation and internal quotation marks omitted). "[T]o satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations." *Schwapp v. Town of*

*Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (citation omitted). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

In determining whether a genuine issue of material fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). Where a party is proceeding *pro se*, the court is obligated to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "a *pro se* party's 'bald assertion,' unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Cole v. Artuz*, No. 93 Civ. 5981 WHP/JCF, 1999 WL 983876 at \*3 (S.D.N.Y. Oct. 28, 1999).[2]

## IV.    DISCUSSION

### A.    Legal Standards

#### 1.    Retaliation

To prevail on a First Amendment retaliation claim, an inmate must establish "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)); *see also Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema,* 534 U.S. 506, 508 (2002)). "Adverse action" for purposes of a

---

[2]    Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

retaliation claim has been defined objectively as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights." *Pidlypchak*, 389 F.3d at 381. Otherwise, the retaliatory act is simply *de minimis* and outside the scope of constitutional protection. *See Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011) (citing *Dawes*, 239 F.3d at 492-93).

An inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the defendants' decision to take action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). In evaluating whether a causal connection exists between the plaintiff's protected activity and a prison official's actions, "a number of factors may be considered, including: (i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation. *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 873). "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." *Id.* A showing of temporal proximity, without more, has generally been found insufficient to survive summary judgment. *See Roseboro*, 791 F. Supp. 2d at 370 (citations omitted).

Because of the relative ease with which claims of retaliation can be incanted, courts have scrutinized retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983), *overruled on other grounds*, *Swierkiewicz*, 534 U.S. at 506. As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of

> unwarranted judicial intrusion into matters of general prison
> administration.  This is so because virtually any adverse action
> taken against a prisoner by a prison official--even those otherwise
> not rising to the level of a constitutional violation--can be
> characterized as a constitutionally proscribed retaliatory act.

*Dawes,* 239 F.3d at 491.

If a plaintiff makes the appropriate showing of retaliation, a defendant may avoid liability
if he demonstrates that he would have taken the adverse action even in the absence of the
protected conduct.  *See Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) ("Regardless of
the presence of retaliatory motive, . . . a defendant may be entitled to summary judgment if he
can show . . . that even without the improper motivation the alleged retaliatory action would have
occurred.") (citation omitted); *Roseboro*, 791 F. Supp. 2d at 371.

### 2.    Personal Involvement

It is well-established that "[p]ersonal involvement of defendants in alleged constitutional
deprivations is a prerequisite to an award of damages under § 1983."  *Wright v. Smith*, 21 F.3d
496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991);
*McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).  As the Supreme Court has noted, a
defendant may only be held accountable for his own actions under § 1983.  *See Ashcroft v. Iqbal*,
556 U.S. 662, 683 (2009) ("[P]etitioners cannot be held liable unless they themselves acted on
account of a constitutionally protected characteristic.").  To prevail on a § 1983 cause of action
against an individual, a plaintiff must show a "tangible connection between the acts of a
defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A personal involvement inquiry on summary judgment "examines only whether there is
record evidence to support a factfinder's conclusion that the individual under consideration was
involved in the alleged conduct."  *Brandon v. Schroyer*, No. 9:13-CV-0939 (TJM/DEP), 2016

WL 1638242, at *14 (N.D.N.Y. Feb. 26, 2016) (quoting *Hendrickson v. U.S. Attorney Gen.*, No. 91 CIV. 8135 (LMM), 1994 WL 23069, at *3 (S.D.N.Y. Jan 24, 1994)), *adopted at* 2016 WL 1639904 (N.D.N.Y. Apr. 25, 2016).

### B.    Analysis

Plaintiff did, as Kirkwood and Reilly assert, testify at his deposition that he was not positive it was Kirkwood and Reilly who tackled him into the wall.  (Dkt. No. 53-4 at 10-12, 19.) However, Plaintiff also testified that after being denied access to the prison gymnasium, he was escorted by Kirkwood to C block, where Plaintiff asked Kirkwood if he could speak to Reilly when he saw him and was told "no, get the F out of here."  *Id.*  According to Plaintiff's testimony, he had thereafter made it up the first flight of stairs when he was tackled into the wall by Kirkwood and Reilly and about four unknown correctional officers.  *Id.*  Furthermore, after testifying at his deposition that he was not sure if Kirkwood and Reilly tackled him into the wall, Plaintiff testified he "[knew Defendant Kirkwood] was behind [him] with Defendant Reilly" when he was tackled into the wall.  (Dkt. No. 54-3 at 19.)

A genuine issue of material fact can be found to exist when the circumstances surrounding an assault indicate the presence of specific defendants, even where a plaintiff does not see or hear his specific assaulter.  *See Cusamano v. Sobek*, 604 F. Supp. 2d 416, 428 (N.D.N.Y. 2009).  In *Cusamano*, the Court found that a genuine issue of material fact existed, even though the Plaintiff admitted that he did not see or hear the defendant as he was actually being frisked or subjected to the use of force.  *Id.*  The Court based its analysis on the fact that the plaintiff had testified during his deposition that after the use of force was complete, he turned around and saw that "all of the officers" were present in the room.  *Id.*

The Court finds the reasoning in *Cusamano* applicable to Plaintiff's retaliation claim against Kirkwood and Reilly, given Plaintiff's testimony that he knew Kirkwood and Reilly were behind him immediately prior to being pushed into the wall and believed they had done it. (Dkt. No. 54-3 at 19.)  In light of Plaintiff's deposition testimony regarding Kirkland and Reilly, including his belief, based upon their being behind him when it occurred, that they had tackled him into the wall, along with the absence of evidence that Defendants were not present and were not involved in tackling Plaintiff into the wall, the Court finds that there is a material issue of fact as to whether Kirkwood and Reilly were personally involved in the alleged adverse action against Plaintiff.[3]

## V.        CONCLUSION

Based on the foregoing, the Court recommends that the motion of Defendants Kirkwood and Reilly for summary judgment be denied.

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Defendants Kirkwood and Reilly's motion for summary judgment (Dkt. No. 54) be **DENIED**; and it is hereby

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Saunders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the

---

[3]        Neither Kirkwood nor Reilly submitted declarations in support of their motion.

[4]        If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last

Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: February 9, 2018
Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

2016 WL 1639904
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Chamma K. Brandon, Plaintiff,

v.

Dr. Glen Schroyer, et al., Defendants.

9:13-CV-939 (TJM/DEP)
|
Signed 04/25/2016

**DECISION & ORDER**

Thomas J. McAvoy, United States District Judge

**\*1** This action, brought pursuant to 42 U.S.C. §§ 1983, 1985 and 19 86, as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc, alleges that Defendants violated the Plaintiff's rights by denying him access to food appropriate to his religion and preventing him participating in religious ceremonies during his incarceration, and by failing to protect him from an assault by a fellow inmate. The action was referred to the Hon. David E. Peebles, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

The Report-Recommendation, dated February 26, 2016, recommends that Defendants' motions for summary judgment be granted in part and denied in part, and that Defendant Glen Schroyer be permitted to file a supplemental motion for summary judgment to address Plaintiff's claims of retaliation. See dkt. # 99. Defendant Schroyer subsequently filed such a motion. See dkt. # 100.

Plaintiff filed objections to the Report-Recommendation. When objections to a magistrate judge's Report-Recommendation are lodged, the Court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which

objection is made." See 28 U.S.C. § 636(b)(1). After such a review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." Id.

Having reviewed the record *de novo* and having considered the issues raised in the Plaintiff's objections, this Court has determined to accept and adopt the recommendation of Magistrate Judge Peebles for the reasons stated in the Report-Recommendation.

It is therefore

**ORDERED** that the Plaintiff's objections to the Report-Recommendation of Magistrate Judge Peebles, dkt. # 111, are hereby OVERRULED. The Report-Recommendation, dkt. # 99, is hereby ADOPTED, and:

1. Defendant Schroyer's motion for summary judgment, dkt. # 75, is hereby GRANTED in part and DENIED in part. The motion is denied with respect to Plaintiff's retaliation claims against Plaintiff and GRANTED in all other respects;

2. Defendant Schroyer's second motion for summary judgment is hereby accepted as filed. The Clerk of Court shall refer the motion to Magistrate Judge Peebles for a Report and Recommendation; and

3. The motion of summary judgment of Defendants Bedard, Blaise, Clancy, Laurin, Kinter, Perry, Web and Wingler, dkt. # 77, is hereby GRANTED in part and DENIED in part. The motion is DENIED with respect to Plaintiff's failure-to-protect claim against Defendants Blaise and Clancy and GRANTED in all other respects.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 1639904

**End of Document**                    © 2018 Thomson Reuters. No claim to original U.S. Government Works.

1999 WL 983876
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Craig COLE, Plaintiff,
v.
Christopher P. ARTUZ, Superintendent, Green
Haven Correctional Facility, R. Pflueger, A.
Glemmon, Sgt. Stevens, Lt. Haubert, Capt.
W.M. Watford, Capt. T. Healey, and John
Doe # 1–5, all as individuals, Defendants.

No. 93 Civ. 5981(WHP) JCF.
|
Oct. 28, 1999.

**Attorneys and Law Firms**

Mr. Craig Cole, Bare Hill Correctional Facility, Malone,
New York, Legal Mail, Plaintiff, pro se.

William Toran, Assistant Attorney General, Office of the
Attorney General of the State of New York, New York,
New York, for Defendant.

*MEMORANDUM & ORDER*

PAULEY, J.

 **\*1** The remaining defendant in this action, Correction
Officer Richard Pflueger, having moved for an order,
pursuant to Fed.R.Civ.P. 56, granting him summary
judgment and dismissing the amended complaint, and
United States Magistrate Judge James C. Francis IV
having issued a report and recommendation, dated
August 20, 1999, recommending that the motion
be granted, and upon review of that report and
recommendation together with plaintiff's letter to this
Court, dated August 28, 1999, stating that plaintiff does
"not contest the dismissal of this action", it is

ORDERED that the attached report and
recommendation of United States Magistrate Judge
James C. Francis IV, dated August 20, 1999, is adopted in
its entirety; and it is further

ORDERED that defendant Pflueger's motion for
summary judgment is granted, and the amended
complaint is dismissed; and it is further

ORDERED that the Clerk of the Court shall enter
judgment accordingly and close this case.

*REPORT AND RECOMMENDATION*

FRANCIS, Magistrate J.

The plaintiff, Craig Cole, an inmate at the Green Haven
Correctional Facility, brings this action pursuant to 42
U.S.C. § 1983. Mr. Cole alleges that the defendant
Richard Pflueger, a corrections officer, violated his First
Amendment rights by refusing to allow him to attend
religious services. The defendant now moves for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set forth below, I recommend
that the defendant's motion be granted.

*Background*

During the relevant time period, Mr. Cole was an
inmate in the custody the New York State Department
of Correctional Services ("DOCS"), incarcerated at the
Green Haven Correctional Facility. (First Amended
Complaint ("Am.Compl.") ¶ 3). From June 21, 1993 to
July 15, 1993, the plaintiff was in keeplock because of
an altercation with prison guards. (Am.Compl.¶¶ 17–
25). An inmate in keeplock is confined to his cell for
twenty-three hours a day with one hour for recreation.
(Affidavit of Anthony Annucci dated Dec. 1, 1994 ¶
5). Pursuant to DOCS policy, inmates in keeplock must
apply for written permission to attend regularly scheduled
religious services. (Reply Affidavit of George Schneider
in Further Support of Defendants' Motion for Summary
Judgment dated September 9, 1996 ("Schneider Aff.") ¶
3). Permission is granted unless prison officials determine
that the inmate's presence at the service would create
a threat to the safety of employees or other inmates.
(Schneider Aff. ¶ 3). The standard procedure at Green
Haven is for the captain's office to review all requests
by inmates in keeplock to attend religious services.
(Schneider Aff. ¶ 3). Written approval is provided to the
inmate if authorization is granted. (Affidavit of Richard
Pflueger dated April 26, 1999 ("Pflueger Aff.") ¶ 5). The
inmate must then present the appropriate form to the

gate officer before being released to attend the services. (Pflueger Aff. ¶ 5).

**\*2** On June 28, 1993, the plaintiff submitted a request to attend the Muslim services on July 2, 1993. (Request to Attend Scheduled Religious Services by Keep–Locked Inmate dated June 28, 1993 ("Request to Attend Services"), attached as Exh. B to Schneider Aff.) On June 30, 1993, a supervisor identified as Captain Warford signed the request form, indicating that the plaintiff had received permission to attend the services. (Request to Attend Services). Shortly before 1:00 p.m. on July 2, 1993, the plaintiff requested that Officer Pflueger, who was on duty at the gate, release him so that he could proceed to the Muslim services. (Pflueger Aff. ¶ 3). However, Officer Pflueger refused because Mr. Cole had not presented the required permission form. (Pflueger Aff. ¶ 3). The plaintiff admits that it is likely that he did not receive written approval until some time thereafter. (Deposition of Craig Cole dated February 28, 1999 at 33–35, 38).

On August 25, 1993, the plaintiff filed suit alleging that prison officials had violated his procedural due process rights. On December 4, 1995, the defendants moved for summary judgment. (Notice of Defendants' Motion for Summary Judgment dated December 4, 1995). The Honorable Kimba M. Wood, U.S.D.J., granted the motion and dismissed the complaint on the grounds that the plaintiff failed to show that he had been deprived of a protected liberty interest, but she granted the plaintiff leave to amend. (Order dated April 5, 1997). On May 30, 1997, the plaintiff filed an amended complaint, alleging five claims against several officials at the Green Haven Correctional Facility. (Am.Compl.) On November 16, 1998, Judge Wood dismissed all but one of these claims because the plaintiff had failed to state a cause of action or because the statute of limitations had elapsed. (Order dated Nov. 16, 1998). The plaintiff's sole remaining claim is that Officer Pflueger violated his First Amendment rights by denying him access to religious services on July 2, 1993. The defendant now moves for summary judgment on this issue, arguing that the plaintiff has presented no evidence that his First Amendment rights were violated. In addition, Officer Pflueger contends that he is entitled to qualified immunity. (Defendants' Memorandum of Law in Support of Their Second Motion for Summary Judgment).

A. *Standard for Summary Judgment*

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Tomka v. Seiler Corp.,* 66 F.3d 1295, 1304 (2d Cir.1995); *Richardson v. Selsky,* 5 F.3d 616, 621 (2d Cir.1993). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Where the movant meets that burden, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute concerning material facts. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party. *Anderson,* 477 U.S. at 255; *Vann v. City of New York,* 72 F.3d 1040, 1048–49 (2d Cir.1995). But the court must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative. *Anderson,* 477 U.S. at 249–50 (citation omitted). "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forward some affirmative indication that his version of relevant events is not fanciful." *Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir.1997) (citation and internal quotation omitted); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible") ((citations omitted)). In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Electric Industrial Co.,* 475 U.S. at 587 (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 288 (1968)); *Montana v. First Federal Savings & Loan Association,* 869 F.2d 100, 103 (2d Cir.1989).

**\*3** Where a litigant is *pro se,* his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest." *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, proceeding *pro se* does not otherwise relieve a litigant from the usual requirements of summary judgment, and a *pro se* party's "bald assertion," unsupported by evidence, is not sufficient to overcome a motion for summary judgment. *See Carey v. Crescenzi,* 923 F.2d 18, 21 (2d Cir.1991); *Gittens v. Garlocks Sealing Technologies,* 19 F.Supp.2d 104, 110 (W.D.N.Y.1998); *Howard Johnson International, Inc. v. HBS Family, Inc.,* No. 96 Civ. 7687, 1998 WL 411334, at *\*3 (S.D .N.Y. July 22, 1998); *Kadosh v. TRW, Inc.,* No. 91 Civ. 5080, 1994 WL 681763, at *\*5 (S.D.N.Y. Dec. 5, 1994) ("the work product of *pro se* litigants should be generously and liberally construed, but [the *pro se*' s] failure to allege either specific facts or particular laws that have been violated renders this attempt to oppose defendants' motion ineffectual"); *Stinson v. Sheriff's Department,* 499 F.Supp. 259, 262 (S.D.N.Y.1980) (holding that the liberal standard accorded to *pro se* pleadings "is not without limits, and all normal rules of pleading are not absolutely suspended").

B. *Constitutional Claim*
It is well established that prisoners have a constitutional right to participate in congregate religious services even when confined in keeplock. *Salahuddin v. Coughlin,* 993 F.2d 306, 308 (2d Cir.1993); *Young v. Coughlin,* 866 F.2d 567, 570 (2d Cir1989). However, this right is not absolute. *See Benjamin v. Coughlin,* 905 F.2d 571, 574 (2d Cir.1990) (right to free exercise balanced against interests of prison officials). Prison officials can institute measures that limit the practice of religion under a "reasonableness" test that is less restrictive than that which is ordinarily applied to the alleged infringement of fundamental constitutional rights. *O'Lone v. Estate of Shaabazz,* 482 U.S. 342, 349 (1986). In *O'Lone,* the Court held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 349 (quoting *Turner v. Safley,* 482 U.S. 78, 89 (1987)). The evaluation of what is an appropriate and reasonable penological objective is left to the discretion of the administrative officers operating the prison. *O'Lone,* 482 U.S. at 349. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547 (1979).

The policy at issue here satisfies the requirement that a limitation on an inmate's access to religious services be reasonable. The practice at Green Haven was to require inmates in keeplock to present written approval to the prison gate officer before being released to attend religious services. This policy both accommodates an inmate's right to practice religion and allows prison administrators to prevent individuals posing an active threat to security from being released. The procedure is not overbroad since it does not permanently bar any inmate from attending religious services. Rather, each request is decided on a case-by-case basis by a high ranking prison official and denied only for good cause.

**\*4** Furthermore, in order to state a claim under § 1983, the plaintiff must demonstrate that the defendant acted with deliberate or callous indifference toward the plaintiff's fundamental rights. *See Davidson v. Cannon* 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence). Here, there is no evidence that the defendant was reckless or even negligent in his conduct toward the plaintiff or that he intended to violate the plaintiff's rights. Officer Pflueger's responsibility as a prison gate officer was simply to follow a previously instituted policy. His authority was limited to granting access to religious services to those inmates with the required written permission. Since Mr. Cole acknowledges that he did not present the necessary paperwork to Officer Pflueger on July 2, 1993, the defendant did nothing improper in denying him access to the religious services. Although it is unfortunate that the written approval apparently did not reach the plaintiff until after the services were over, his constitutional rights were not violated. [1]

*Conclusion*
For the reasons set forth above, I recommend that the defendant's motion for summary judgment be granted and judgment be entered dismissing the complaint. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days to file written objections to this report and recommendation. Such objections shall be filed with

the Clerk of the Court, with extra copies delivered to the chambers of the Honorable William H. Pauley III, Room 234, 40 Foley Square, and to the Chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 983876

Footnotes

1     In light of this finding, there is no need to consider the defendant's qualified immunity argument.

**End of Document**                                        © 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:15-cv-00466-MAD-TWD   Document 63   Filed 02/09/18   Page 17 of 19

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

1994 WL 23069
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Dale HENDRICKSON, Plaintiff,

v.

UNITED STATES ATTORNEY GENERAL, G.L.
Hershberger, United States Bureau of Prisons, Gary
Morgan, Pamela Ashline, Kenneth Walicki, Hulet
Keith, Otisville Medical Department, Defendants.

No. 91 CIV. 8135.
|
Jan. 24, 1994.

MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** On December 4, 1991, pro se plaintiff Dale
Hendrickson ("Plaintiff" or "Hendrickson"), an inmate
then in confinement at the Federal Correctional
Institution in Otisville, New York ("Otisville"), filed this
action for injunctive relief and damages based upon
alleged violations of his rights under the United States
Constitution, Amendments I, IV, V, VI, IX, and XIII,
and upon violations of various laws and/or regulations
governing prison administration. [1] The Complaint named
as defendants G.L. Hershberger ("Hershberger"), the
United States Attorney General ("Attorney General"),
Gary Morgan ("Morgan"), Pamela Ashline ("Ashline"),
Kenneth Walicki ("Walicki"), Hulett Keith ("Keith"), the
Bureau of Prisons ("BOP"), and the Otisville Medical
Department ("OTV Medical Department") (collectively
"Defendants"). Defendants moved for judgment on the
pleadings pursuant to Rule 12(c) of the Federal Rules
of Civil Procedure, or, in the alternative, for summary
judgment pursuant to Rule 56 of the Federal Rules of Civil
Procedure. For the reasons set out below, Defendants'
Rule 12(c) motion is granted.

I.

Defendants move to dismiss Plaintiff's Complaint,
pursuant to Rule 12(c) of the Federal Rules of Civil

Procedure, for failure to state a claim upon which relief
can be granted. Rule 12(c) provides:

> After the pleadings are closed but
> within such time as not to delay
> the trial, any party may move
> for judgment on the pleadings.
> If, on a motion for judgment on
> the pleadings, matters outside the
> pleadings are presented to and
> not excluded by the court, the
> motion shall be treated as one for
> summary judgment and disposed of
> as provided in Rule 56, and all
> parties shall be given reasonable
> opportunity to present all material
> made pertinent to such a motion by
> Rule 56.

Fed.R.Civ.P. 12(c). "[T]he same standards that are
employed for dismissing a complaint for failure to state
a claim under Fed.R.Civ.P. 12(b)(6) are applicable" to a
Rule 12(c) motion to dismiss for failure to state a claim
upon which relief can be granted. *See Ad–Hoc Comm.
of the Baruch Black & Hispanic Alumni Ass'n v. Bernard
M. Baruch College,* 835 F.2d 980, 982 (2d Cir.1987); *see
also Viacom Int'l. Inc. v. Time, Inc.,* 785 F.Supp. 371, 375
n. 11 (S.D.N.Y.1992); 5A Charles Wright and Arthur R.
Miller, *Federal Practice and Procedure* ¶ 1367, at 515–
16 (1990). Thus, the Court must read the Complaint
generously, drawing all reasonable inferences from the
complainant's allegations. *See California Motor Transp. v.
Trucking Unlimited,* 404 U.S. 508, 515 (1972). Moreover,
"consideration is limited to the factual allegations in
[the] amended complaint, which are accepted as true, to
documents attached to the complaint as an exhibit or
incorporated in it by reference, to matters of which judicial
notice may be taken, or to documents either in plaintiff['s]
possession or of which plaintiff[ ] had knowledge and
relied on in bringing suit." *Brass v. American Film
Technologies, Inc.,* 987 F.2d 142 (2d Cir.1993); *accord
Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d
Cir.1991); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949
F.2d 42, 47–48 (2d Cir.1991), *cert. denied,* 112 S.Ct.
1561 (1992); *Frazier v. General Elec. Co.,* 930 F.2d 1004,
1007 (2d Cir.1991). Defendants, therefore, are entitled to
dismissal for failure to state a claim only if the Court finds
beyond a doubt that "plaintiff can prove no set of facts"
to support the claim that plaintiff is entitled to relief. *See
Conley v. Gibson,* 355 U.S. 41, 45–46 (1957).

Case 9:15-cv-00466-MAD-TWD    Document 63    Filed 02/09/18    Page 18 of 19

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)
1994 WL 23069

**\*2** Because the 3(g) statement and declarations submitted to this Court by Defendants have not been considered and are hereby excluded from the record, the Court renders its judgment on the pleadings pursuant to Rule 12(c).

## II.

Drawing all inferences in favor of the Plaintiff, *Miller v. Polar Molecular Corp.,* 12 F.3d 1170, 1993 WL 527434 (2d Cir.), the facts are as follows.

During Hendrickson's confinement at Otisville, certain video tapes which had been supplied to him by the government were "systematically and maliciously confiscated"; audio tapes and legal materials also were removed from Plaintiff's possession while he was a pre-trial detainee at Otisville. In retaliation for his bringing legal materials into the Otisville compound area, Plaintiff claims, he was placed in administrative detention. Compl. at 1 (presumably ¶ A.)

Hendrickson also claims at various times to have been wrongly isolated from the general prison population based on alleged and allegedly erroneous OTV Medical Department claims that he had tuberculosis. *Id.* ¶ B. During these periods of medical confinement, Hendrickson claims that the "4A unit team" denied him personal visits, his right to send mail, and telephone communications and consultations necessary to his legal representation. *Id.* ¶ C.

Hendrickson claims that as part of his medical confinement he was "subjected to ruthless and inhumane [d]isciplinary action from the D[isciplinary] H [earing] O[fficer]," and was for 15 days placed in administrative detention and for 30 days deprived of commissary, visitation, and phone privileges. *Id.* ¶ D.

Hendrickson further alleges that commissary items that he had in his possession before entering medical confinement were wrongly confiscated from him, and while in such confinement he was assaulted and searched by the "OTV Riot Squad." *Id.* ¶ E. In addition, he claims, commissary receipts, as well as legal documents and other legal materials were confiscated from him. *Id.* ¶ F.

## III.

Defendants argue that Plaintiff fails to state a claim for which relief may be granted. Of course, in considering a pro se pleading, the Court takes into consideration the special circumstances of pro se litigants. As the Second Circuit has often noted, "special solicitude should be afforded pro se litigants generally, when confronted with motions for summary judgment." *Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir.1988); *accord, e.g., Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 767 (2d Cir.1983). We apply the same solicitous standard to the instant motion to dismiss.

Plaintiff, however, has failed to present to this Court either a colorable theory of violation of legal duties or facts to support a claim that might be inferred from the pleadings. Even assuming the truth of Plaintiff's allegations, the Court is left without a cognizable claim before it.

**\*3** At the outset, the Court notes that to the extent that the Complaint seeks injunctive relief from conditions of Plaintiff's treatment while at Otisville as a pre-trial detainee, the claim is now moot as Plaintiff has since been transferred to the United States Penitentiary in Lompoc, California following his conviction at trial. Hendrickson's Complaint also fails to the extent that it seeks damages from the United States government or government officials in their official capacity. Because the United States government enjoys sovereign immunity, it can be sued only to the extent it so consents. *United States v. Mitchell,* 445 U.S. 535, 538 (1980) (quoting *U.S. v. Sherwood,* 312 U.S. 584, 586 (1941)). No such immunity has been waived in suits for damages arising from constitutional violations. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864 (1983). Thus, the only possible redress remaining available to Plaintiff for the harms alleged is a *Bivens* action [2] against government officials in their personal capacities for actions taken under the color of governmental authority.

As Defendants point out, however, Plaintiff has nowhere, other than in the caption of the Complaint, mentioned by name any of the individual named Defendants. Defs.' Mem.Supp.Mot.Dismiss or Summ.Jt. at 2. It is true that Plaintiff did in the body of the Complaint name the "4A

Case 9:15-cv-00466-MAD-TWD    Document 63    Filed 02/09/18    Page 19 of 19

Hendrickson v. U.S. Atty. Gen., Not Reported in F.Supp. (1994)

1994 WL 23069

Unit Team," the "DHO," and the "OTV Riot Squad," but these designations of group actions undifferentiated as to individuals and of official titles unconnected to any individual names do not allege the actionable *individual* behavior necessary to sustain a *Bivens* claim.

In a *Bivens* action, where Defendants are sued in their personal capacities, actionable behavior must be alleged as to individuals. *See, e.g., Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Barbera v. Smith,* 836 F.2d 96, 99 (2d Cir.1987), *cert. denied,* 489 U.S. 1065 (1989). A complaint that fails to make any specific factual allegations of "direct and personal responsibility on the part of any of the named defendants in regard to the loss of any of [plaintiff's] property" must be dismissed. *Lee v. Carlson,* 645 F.Supp. 1430, 1436 (S.D.N.Y.1986).

More importantly, the light in which a pro se complaint may be considered does not burn so brightly as to blind the court as to the rights of defendants who are entitled to have claims against them alleged with sufficient clarity as to make possible a defense. Even in a pro se complaint, claims must "specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense ..." *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977). Otherwise, blameless parties would be subject to damages claims for free-floating innuendo. To be

sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law. Although the Court may make special efforts to understand the underlying claim of a vague, confusing, or poorly crafted pro se complaint that it would not undertake in connection with a claim prepared by legal counsel, it cannot do so to the extent that this would work an injustice to defendants, whose rights also must be protected. A defendant who is alleged to be liable for his actions has a right to have the claims against him spelled out with a basic degree of clarity and particularity. *See supra* at 7. Although some of the harms alleged by Plaintiff might conceivably be of some substance, the Court cannot understand from the documents before it which defendants are alleged to have participated in which allegedly actionable behavior. The Court cannot on such a basis subject a party to potential liability. *See* Defs' Mot. at 9, 10.

*Summary and Order*

**\*4** For the reasons stated, Plaintiff has failed to plead a colorable case. Defendants' motion to dismiss is granted.

**All Citations**

Not Reported in F.Supp., 1994 WL 23069

Footnotes

1    The Complaint states only that "Bureau of Prison institutional Law" was violated; subsequent documents filed by Plaintiff imply the violation of specific prison policies. *See, e.g.,* Letter from Hendrickson to Judge McKenna of 10/13/93 at 2 (citing BOP Policy Statement 1315.3 purportedly concerning prisoner access to legal materials while in administrative detention).

2    *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388 (1971).

**End of Document**                          © 2018 Thomson Reuters. No claim to original U.S. Government Works.